**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL E. FUHRMAN, <u>et al.</u>, | : | |
| Plaintiffs | : | No. 1:21-cv-02024 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| BRIAN A. MAWYER, <u>et al.</u>, | : | |
| Defendants | : | |

## <u>MEMORANDUM</u>

Before the Court is the Third Amended Complaint ("TAC") (Doc. No. 25) filed by

Plaintiffs Michael E. Fuhrman and Linda M. Angel, Co-Executors of the Estate of their father,

Eugene V. Fuhrman ("Plaintiffs").   Four motions to dismiss the TAC have been filed by

Defendants Lindsay Goldberg, LLC and Goldberg, Lindsay & Co., LLC ("LG Defendants"),

Defendant H.I.G. Capitol, LLC ("Defendant H.I.G."), Defendants Pixelle Specialty Solutions,

LLC ("Defendant Pixelle Specialty") and Pixelle Specialty Solutions Holding, LLC ("Defendant

Pixelle Holding," and with Defendant Pixelle Specialty, "Pixelle Defendants"), and Defendant

Shenandoah Valley Farms, LLC ("Defendant SVF") (collectively, "Moving Defendants").  (Doc.

Nos. 60, 63, 65, 66.)  For the reasons that follow, the Court will grant the pending motions to

dismiss.

## I.    BACKGROUND

The following factual background is drawn from the TAC.  (Doc. No. 25.)  Because the

TAC spans 297 pages and contains hundreds of paragraphs and subparagraphs—many of which

contain identical allegations—only the relevant facts are summarized below.

Plaintiffs allege that, on February 23, 2021, Defendant Brian A. Mawyer ("Defendant

Mawyer") was driving a tractor owned by Defendant Charles R. Richards d/b/a B&C Enterprise

("Defendant Richards") and hauling a trailer loaded with timber from property owned by

Defendants Tapscott Brothers Trucking, Inc. ("Defendant Tapscott Trucking") and Tapscott

Brothers Logging, Inc. ("Defendant Tapscott Logging," and with Defendant Tapscott Trucking,

"Defendant Tapscott Brothers"), to property owned by the alleged Pixelle Defendant, which is

purportedly comprised of the LG Defendants, Pixelle Defendants, and Defendant H.I.G. (the

"Alleged Pixelle Defendant").[1]  (Id. ¶¶ 13, 30, 41–42, 44, 48.)  Plaintiffs allege that Defendant

Tapscott Brothers "contracted" with Defendant SVF to transport the timber with the full

knowledge and consent of the Alleged Pixelle Defendant (i.e., the LG Defendants, Pixelle

Defendants, and Defendant H.I.G.).  (Id. ¶ 37.)  Plaintiffs also aver that Defendant Tapscott

Brothers "knowingly loaded [the trailer with] . . . timber at a capacity that it knew would cause

the tractor trailer unit . . . to be overweight" and failed "to properly secure the timber in the

trailing unit."  (Id. ¶¶ 44–46).

At approximately 10:29 a.m., Decedent Eugene V. Fuhrman ("Decedent")'s vehicle,

which "had [a] green light and [was] lawfully proceed[ing] through the intersection" on East

Middle Street in Hanover Borough, Pennsylvania, was struck by Defendant Mawyer's tractor,

which purportedly ran a red light while he was transporting the timber load.  (Id. ¶¶ 48–52.)  As

a result of the collision, which was allegedly caused by Defendant Mawyer's "negligent,

careless, and reckless" operation of his vehicle, Decedent suffered traumatic injuries that "caused

him great pain and suffering," ultimately resulting in his death.  (Id. ¶ 52–54.)

Plaintiffs aver that, at all relevant times, "Defendant Mawyer was the agent, servant,

workman, contractor and/or employee of Defendant Richards and/or Defendant Tapscott

---

[1]  "Upon information and belief," Plaintiffs allege that the LG Defendants were "trading as and doing business as Pixelle Specialty Solutions" (id. ¶¶ 22, 25) and that Defendant H.I.G. "is the successor in interest to Pixelle Specialty Solutions, LLC and/or Pixelle Specialty Solutions Holding, LLC" (id. ¶ 29).

Brothers and/or Defendant Shenandoah Valley Farms, LLC, and/or [the Alleged Pixelle Defendant] and was acting within the course and scope of his agency and/or employment." (Id. ¶ 34.) Additionally, Plaintiffs allege that the Alleged Pixelle Defendant "had the contractual right to and/or exercised such control over the transportation of the load in question, . . . that Defendants Mawyer, Richards, Tapscott Brothers, and [SVF]" should be considered the Alleged Pixelle Defendant's agents. (Id. ¶ 36.) Plaintiffs assert that "[a]s a direct and proximate result" of the allegedly "negligen[t], careless, gross, wanton, and reckless conduct of Defendants," Defendants "either alone or combined . . . directly and proximately caused the Crash" that resulted in the death of Decedent, their father. (Id. ¶¶ 54–56.)

On December 2, 2021, Plaintiffs initiated the above-captioned action on behalf of Decedent by filing a complaint in this Court against Defendants Mawyer, Richards, and Tapscott Trucking (collectively, "Original Defendants"). (Doc. No. 1.) Plaintiffs' initial complaint asserted the same three claims against each of the Original Defendants: survival; wrongful death; and punitive damages.[2] On January 31, 2022, the Original Defendants filed a motion to dismiss and a motion for a more definite statement. (Doc. No. 7.) On June 28, 2022, the Court denied the motion to dismiss, but granted, in part, the motion for a more definite statement and provided Plaintiffs twenty-one (21) days to file an amended complaint. (Doc. No. 11.) Consistent with the Court's Order, Plaintiffs filed a first amended complaint on July 15, 2022. (Doc. No. 12.)

On February 21, 2023, the parties stipulated to the filing of a second amended complaint (Doc. No. 21), which added Defendant SVF as a party and asserted survival, wrongful death, and punitive damages counts against it (Doc. No. 22). On February 22, 2023, the parties stipulated to

---

[2]   As previously noted by the Court, punitive damages are a remedy, not a separate cause of action. (Doc. No. 10 n.1.)

the filing of a third amended complaint (Doc. No. 24), which added Defendant Tapscott Logging and the remaining Moving Defendants as parties and asserted survival, wrongful death, and punitive damages counts against each Defendant (Doc. No. 25).

The Original Defendants filed an answer to the TAC with affirmative defenses on March 31, 2023 (Doc. Nos. 36), and Defendant Tapscott Logging filed an answer with affirmative defenses on April 28, 2023 (Doc. No. 54). On May 19, 2023, Defendant SVF filed the first of the four pending motions to dismiss. (Doc. No. 60.) Defendant SVF's motion to dismiss requests an order: striking the TAC under Rules 8(a)(2) and 12(f) for failing to provide a short and plain pleading; dismissing the TAC for failing to state a claim under Rule 12(b)(6); or in the alternative, directing Plaintiffs to file more a definite statement under Rule 12(e). (Id.) The LG Defendants filed the second pending motion, which offers two grounds for dismissal: failure to comply with Rule 8, and lack of personal jurisdiction under Rule 12(b)(2). (Doc. No. 63.) Defendant H.I.G. filed the third pending motion, which seeks dismissal based on Rules 8, 12(b)(2), and 12(b)(6). (Doc. No. 65.) Finally, the Pixelle Defendants filed the fourth pending motion, which seeks to strike the TAC under Rule 8 and dismissal under Rule 12(b)(6). (Doc. No. 66.) The Moving Defendants have each filed a brief in support of their motions (Doc. Nos. 64, 67, 68, 73), and Plaintiffs have filed briefs in opposition (Doc. Nos. 74, 75, 76, 77). The Pixelle Defendants, LG Defendants, and Defendant H.I.G. have also filed reply briefs in further support of their respective motions. (Doc. Nos. 78, 79, 80.) Having been fully briefed, the pending motions are ripe for disposition.

4

## II.    LEGAL STANDARDS

As indicated above, the pending motions implicate several Federal Rules of Civil Procedure.  However, for the reasons discussed, <u>infra</u>, the Court finds Rules 12(b)(2) and 8 sufficient to resolve the pending motions.

### A.    Federal Rule of Civil Procedure 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) permits a defendant to move to dismiss a complaint for lack of personal jurisdiction.  <u>See</u> Fed. R. Civ. P. 12(b)(2).  Once "the defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction."  <u>See</u> <u>Carteret Sav. Bank, FA v. Shushan</u>, 954 F.2d 141, 146 (3d Cir. 1992).  If the defendant supports its motion with "competent evidence refuting jurisdiction,"[3] <u>see</u> <u>Carbonite Filter Corp. v. C. Overaa & Co.</u>, 353 F. Supp. 3d 332, 336 (M.D. Pa. 2018), the plaintiff must submit its own competent evidence to rebut the defendant's submissions, and cannot carry its burden of establishing personal jurisdiction by relying on an "unverified complaint" or "bare assertions made 'upon information and belief,'" <u>see</u> <u>Nugeneration Technologies, LLC, v. Shoeb Moiyadi, Ecolink, Inc., et al.</u>, No. 23-cv-00459, 2023 WL 5020831, at *3 (D.N.J. Aug. 7, 2023) (collecting cases); <u>see also</u> <u>Time Share Vacation Club v. Atl. Resorts, Ltd.</u>, 735 F.2d 61, 66 n.9 (3d Cir.1984) (explaining "at no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction" (citing

---

[3]  A court may consider the parties' affidavits and other evidence when making determinations regarding personal jurisdiction.  <u>See</u> <u>Metcalfe v. Renaissance Marine, Inc.</u>, 566 F.3d 324 (3d Cir. 2009); <u>Connell v. CIMC Intermodal Equip.</u>, No. 1:16-cv-00714, 2016 WL 7034407, at *1 (M.D. Pa. Dec. 2, 2016).

International Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc., 673 F.2d 700 (3d Cir. 1982)).

"A federal court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of the state." Carteret Sav. Bank, 954 F.2d at 144–45 (quoting Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 436 (3d Cir. 1987)). Pennsylvania's long-arm statute permits the Court to exercise personal jurisdiction "to the fullest extent allowed under the Constitution of the United States." See 42 Pa. C.S. § 5322(b). Therefore, in its exercise of personal jurisdiction, this Court is constrained only by the Due Process Clause of the United States Constitution, which requires that a defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." See O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Requiring "minimum contacts" between the defendant and the forum state gives "fair warning" to a defendant that he or she may be called to defend a lawsuit in that state. See Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (quotation omitted).

Two types of personal jurisdiction comport with these notions of due process: general and specific jurisdiction. See Daimler AG v. Bauman, 134 S. Ct. 746 (2014). "General jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state," Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007) (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414–15 & n.8 (1984)), as well as when a defendant consents to jurisdiction or is present or domiciled in the jurisdiction when process is served, see 42 Pa. C.S. § 5301(a)(1)(i)–(iii). Specific jurisdiction encompasses cases "in which the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" See Daimler

6

AG, 134 S. Ct. at 754 (citations omitted).  A court's determination as to whether the exercise of specific jurisdiction is proper typically turns on a three-part inquiry: (1) the defendant must have sufficient minimum contacts that are "'purposefully directed . . .' at the forum"; (2) "the litigation must 'arise out of or relate to' at least one of those activities";  and (3) "if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with 'fair play and substantial justice.'"  See O'Connor, 496 F.3d at 317 (alterations in original) (first citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985); then citing Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 414; and then citing Grimes v. Vitalink Commc'ns Corp., 17 F.3d 1553, 1559 (3d Cir. 1994)).

### B.   Federal Rule of Civil Procedure 8

 Rule 8 requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  See Fed. R. Civ. P. 8(a)(2).  To comply with Rule 8, a complaint need only "'[provide] the defendant fair notice of what the plaintiff[s'] claim[s] [are] and the grounds upon which [they] res[t][.]'"  See Thompson v. Hens-Greco, No. 16-cv-01100, 2016 WL 7046959, at *2 (W.D. Pa. Nov. 8, 2016), report and recommendation adopted, No. 2:16-cv-01100, 2016 WL 7035067 (W.D. Pa. Dec. 2, 2016).  "[T]he more precise bases of claims," by contrast, are "intended . . . [to] be disclosed and/or developed through" discovery. See id. (quoting Brejcak v. County of Bucks, No. 03-cv-04688, 2004 WL 377675, at *2 (E.D. Pa. Jan. 28, 2004)); see also Brejcak, 2004 WL 377675, at *4 (remarking that "[t]o shift the factual emphasis from th[e] discovery stage back to the pleading stage distorts both the purpose and the function of the Federal Rules of Civil Procedure and the administration of this civil case" (emphasis removed) (citing Fed. R. Civ. P. 1)).

Complaints that are neither "short" nor "plain" violate Rule 8.  See Garrett v. Wexford Health, 938 F.3d 69, 93 (3d Cir. 2019); In re Westinghouse Sec. Litig., 90 F.3d 696, 703 (3d Cir. 1996); see also 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1217 (3d ed. 2010) (explaining that Rule 8's requirements "have been held to be violated by a pleading that was needlessly long").  Rule 8(a)'s "short" statement requirement works in tandem with Rule 8(d), which provides that "[e]ach allegation must be simple, concise, and direct."  See Fed. R. Civ. P. 8(d)(1).  The "short" statement requirement does not envision a single "'proper length' for stating a particular claim" because "[t]he level of factual detail will vary with the complexity of the claim asserted."   See Garrett, 938 F.3d at 93.  Nevertheless, "a district court acts within its discretion when it dismisses an excessively prolix and overlong complaint, particularly where a plaintiff declines an express invitation to better tailor her pleading."  See id.; Thompson v. Hens-Greco, No. 16-cv-01100, 2016 WL 7046959, at *2 (explaining that courts have "dismiss[ed], on motion or sua sponte, and with leave to refile, excessively and burdensomely factual complains").  This is so because unnecessarily complex and verbose complaints unfairly burden defendants as well as the judiciary.  See Trainer v. Anderson, No. 12-cv-02409, 2012 WL 1898605, at *1 (D.N.J. May 22, 2012) (explaining that "[d]istrict courts should not have to read and decipher tomes disguised as pleadings" (quoting Lindell v. Houser, 442 F.3d 1033, 1035 n.1 (7th Cir. 2006)); see also Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1059 (9th Cir. 2011) (explaining that "district courts are busy enough without having to penetrate a tome approaching the magnitude of [Leo Tolstoy's] War and Peace to discern a plaintiff's claims and allegations").

Rule 8's "plain" statement requirement, in turn, requires a pleading to "'identif[y] discrete defendants and the actions taken by these defendants' in regard to the plaintiff's claims."

See Garrett, 938 F.3d at 93 (quoting Harnage v. Lightner, 916 F.3d 138, 141 (2d Cir. 2019)).  "A pleading that is so 'vague or ambiguous' that a defendant cannot reasonably be expected to respond to it will not satisfy Rule 8."  Id. (quoting Schaedler v. Reading Eagle Publ'n, Inc., 370 F.2d 795, 799 (3d Cir. 1967)).  Complaints that violate these requirements "are often disparagingly referred to as 'shotgun pleadings.'"  See Weiland v. Palm Beach County Sheriff's Office, 792 F.3d 1313, 1320 (11th Cir. 2015).

The Third Circuit has an established policy against "shotgun pleading[s]."  See Hynson ex rel. Hynson v. City of Chester Legal Dep't, 864 F.2d 1026, 1031 n.13 (3d Cir. 1988).  Courts in this circuit have recognized four types of shotgun pleadings: "(1) 'a complaint containing multiple counts where each count adopts the allegations of all preceding counts'; (2) a complaint that is 'replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action'; (3) a complaint that does not 'separat[e] into a different count each cause of action or claim for relief'; and (4) a complaint that 'assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."  See Bartol v. Barrowclough, 251 F. Supp. 3d 855 at 859 (E.D. Pa. 2017) (quoting Weiland, 792 F.3d at 1321–23).  At bottom, shotgun pleadings "fail[,] . . . in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  See id.; see, e.g., M.B. v. Schuylkill County, 375 F. Supp. 3d 574, 586 (E.D. Pa. 2019) (same).

### III.   DISCUSSION

The Court will first consider whether it can assert personal jurisdiction over the LG

Defendants and Defendant H.I.G before addressing whether Plaintiffs' TAC complies with the

pleading requirements provided by the Federal Rules of Civil Procedure.

### A.   The LG Defendants' and Defendant H.I.G.'s Rule 12(b)(2) Motions

### 1.   The LG Defendants' Motion to Dismiss

### a.   Arguments of the Parties

The LG Defendants argue that the TAC does not provide any basis for inferring that they

are subject to general or specific jurisdiction in Pennsylvania.  As to specific jurisdiction, the LG

Defendants contend that the TAC "fails to show facts showing how Plaintiffs' claims arise out of

or relate to any specific conduct purposefully directed at Pennsylvania by th[em]" because it

"lumps together" the activities of five different "defendants under the shorthand, Pixelle [(the

Alleged Pixelle Defendant)]," and in so doing, "fails to state facts showing how Plaintiffs' claims

arise out of or relate to any specific conduct purposefully directed at Pennsylvania by the LG

Defendants."  (Doc. No. 64 at 8–9.)  The LG Defendants further argue that the TAC is "subject

to dismissal under Rule 12(b)(2) based on" the evidence they have offered in support of their

motion, see infra Section III.A.1.b, which they claim precludes any inference that they are

subject to personal jurisdiction in Pennsylvania.  (Id. at 9.)

In response, Plaintiffs concede that the LG Defendants are not subject to general

jurisdiction in Pennsylvania and "are not alleged to have deliberately contacted Pennsylvania."

(Doc. No. 75 at 29.)  However, they appear to assert two separate arguments for why personal

jurisdiction should be imputed to LG Defendants.  First, based on their allegation that, "upon

information and belief," the LG Defendants were "trading and doing business as Pixelle

Specialty Solutions" (Doc. No. 25 ¶¶ 22, 25), Plaintiffs argue the Pixelle Defendants and LG

Defendants "might" share an alter-ego relationship, which they seek to substantiate with jurisdictional discovery.[4]  (Doc. No. 75 at 29, 40.)  Plaintiffs offer their own evidence to support their alter-ego theory.  Second, based on their allegations that the Alleged Pixelle Defendant— which includes LG Defendants, the Pixelle Defendants, and Defendant H.I.G.—were involved in the timber-transportation contract giving rise to the accident, Plaintiffs argue that the Court should impute personal jurisdiction over LG Defendants based on the conduct of its alleged agents, including Defendant Mawyer.  (Id. at 30, 34.)  To substantiate their agency theory of personal jurisdiction, Plaintiffs seek discovery "to determine . . . whether [LG Defendants'] management team was involved in placing the order of the timber at issue in this case from Tapscott Defendants and in arranging for the transportation of the timber from Virginia to Pixelle Solution's property in Spring Grove, Pennsylvania."  (Id. at 34–36.)  Plaintiffs do not offer evidence in support of their agency theory.

> **b.    The Evidence Offered by the Parties**

In support of their Rule 12(b)(2) motion, the LG Defendants filed an affidavit prepared by J. Russel Triedman ("Triedman Declaration"), a managing partner for Defendant Goldberg Lindsay.  In relevant part, the Triedman Declaration states that:

- "The LG Defendants are not registered to do business in Pennsylvania and do not have offices in Pennsylvania";

- Lindsay Goldberg has no employees and "is a wholly-owned subsidiary of Goldberg Lindsay" that "generally acts as a contractual counterparty for the business of Goldberg Lindsay";

---

[4]  Plaintiffs also appear to assert an agency-based theory of personal jurisdiction, which they claim follows from their "alleg[ation]" that "Pixelle Defendants should be considered agents of LG Defendants."  (Doc. No. 75 at 29.)  Plaintiffs, however, do not cite where this supposed allegation appears in the TAC—nor can the Court find such an allegation.

- "Goldberg Lindsay provides services to investment funds that generally invest in privately-held businesses, referred to generally as 'portfolio companies'";

- "The investments funds are separate and distinct legal entities from the LG Defendants";

- "The services provided by Goldberg Lindsay to the funds include identifying, evaluating, structuring, and recommending which portfolio investments be made by the funds, assisting with the disposition of those investments, and providing administrative support to the funds ('investment management services')";

- "Goldberg Lindsay does not provide any services pertaining to the day-to-day operations of portfolio companies or otherwise have any involvement in those activities," and "all decisions about day-to-day operations of a portfolio company are the responsibility of employees of that portfolio company";

- "At the time of the 2021 trucking accident, Defendant Pixelle . . . Holding . . . was a portfolio company of several investment funds (the 'Funds'), meaning that the Funds had an equity interest in Pixelle Holding";

- "At the time of the 2021 trucking accident, Goldberg Lindsay provided investment management services to the Funds";

- "At the time of the 2021 trucking accident, Pixelle Holding was a paper company that operated as Pixelle Specialty . . .";

- "Pixelle Specialty operated paper machines at several mills around the country," one of which "was located at 228 S. Main Street, Spring Grove, Pennsylvania";

- "The LG Defendants have never owned or leased any portion of 228 S. Main Street, Spring Grove, Pennsylvania or had an office at that location";

- "The LG Defendants have never traded as or done business as 'Pixelle Specialty Solutions,'" or as "as any company with 'Pixelle' in its name";

- "The LG Defendants were separate legal entities from Pixelle Holding and Pixelle Specialty during the time when Pixelle Holding was a portfolio company of the Funds";

- "No employee of Goldberg Lindsay was involved in the day-to-day operations of Pixelle Specialty or Pixelle Holding";

- "No employee of Goldberg Lindsay was involved in the purchase of raw materials for delivery to Pixelle Holding's or Pixelle Specialty's Pennsylvania mill";

- "With respect to the 2021 trucking accident, no employee of Goldberg Lindsay was involved in purchasing or arranging for transporting the timber";

- "No employee of Goldberg Lindsay had any contact with Defendants Mawyer, Richards, Tapscott Brothers, or Shenandoah or was involved in any decision to use their services";

- "Mawyer, Richards, Tapscott Brothers, and Shenandoah were not employees or agents of the LG Defendants"; and

- "No employee of Goldberg Lindsay knew about, controlled, or consented to any of Mawyer, Richards, Tapscott Brothers, or Shenandoah's actions pertaining to transporting this load including on the day of the 2021 trucking accident."

(Doc. No. 64-1 at ¶¶ 2, 5–27.)

In response, Plaintiffs request that the Court take judicial notice of the following information from Defendant Pixelle Specialty's website:

Pixelle Specialty Solutions Holding LLC ("Pixelle" or the "Company"), a leading provider of fiber-based specialty solutions in North America and portfolio company of Lindsay Goldberg, today announced that it has signed a definitive agreement to be acquired by an affiliate of H.I.G. Capital ("H.I.G."), a leading global alternative investment firm with $48 billion of equity capital under management. Terms of the transaction were not disclosed.

Pixelle was formed in 2018 by Lindsay Goldberg, a private investment firm that focuses on partnering with families, founders and management teams seeking to actively build their businesses. Pixelle has built an industry-leading four-mill specialty paper platform with mills in Chillicothe, OH; Jay, ME; Spring Grove, PA; and Stevens Point, WI. Collectively the mills operate 11 paper machines and produce more than one million tons of paper annually.

Timothy Hess, Pixelle's Chief Executive Officer, said, "Together with Lindsay Goldberg, Pixelle has developed a broad, innovative portfolio of industry leading brands across the specialty papers and sustainable packaging markets. In under four years, we have transformed Pixelle into the leading specialty-focused paper producer in North America through three strategic acquisitions and successful implementation of a continuous improvement program. We thank Lindsay

Goldberg for their partnership and look forward to our next chapter with H.I.G. Capital."

Russell Triedman, Managing Partner at Lindsay Goldberg, added, "We are very pleased to have partnered with Pixelle's management to execute on a strategic plan to position the business as a true market leader and partner of choice to its customers. We are especially proud to have worked with Pixelle's management team to advance the company's sustainability initiatives, including responsible sourcing practices, reduced energy consumption, and the continued development of environmentally friendly products. Pixelle is poised for continued success and we wish Tim and his team the best."

(Doc. No. 75-1.)  The Court will take judicial notice of this information because the LG

"Defendant[s] d[o] not dispute the accuracy of the . . . websit[e] cited by the [Plaintiffs][.]"  See

United States v. Nyce, No. 20-cv-00063, 2022 WL 1214171, at *3 (E.D. Pa. Apr. 25, 2022)

(citing Perkins v. LinkedIn Corp., 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014) (taking judicial

notice of publicly available website where the defendant did dispute or "otherwise content" that

the information was "inaccurate")).

### c.    Analysis

Whether this Court can assert personal jurisdiction over the LG Defendants turns on the

merits of Plaintiffs' alter-ego and agency-based theories.  The Court will consider each theory in

turn.

The Third Circuit has endorsed an alter-ego theory of personal jurisdiction, explaining

"that, if a subsidiary is merely the agent of a parent corporation, or if the parent corporation

otherwise 'controls' the subsidiary, then personal jurisdiction exists over the parent whenever

personal jurisdiction (whether general or specific) exists over the subsidiary."  See Shuker, 885

F.3d at 781 (collecting cases).  To succeed on an alter-ego theory, the "[p]laintiffs must prove

that the parent controls the day-to-day operations of the subsidiary such that the subsidiary can

be said to be a mere department of the parent."  See In re Enter. Rent-A-Car Wage & Hour Emp.

Pracs. Litig., 735 F. Supp. 2d 277, 318 (W.D. Pa. 2010) (quoting In re Latex Gloves Prods. Liab.

Litig., No. MDL-1148, 2001 WL 964105, at *3 (E.D. Pa. Aug. 22, 2001)).  "There is a strong

presumption against . . . deeming companies alter egos of each other."  McNicholas v. Century

Link, Inc., No. 21-cv-02344, 2022 WL 4002314, at *5 (E.D. Pa. Aug. 31, 2022) (cleaned up)

(quoting Deardorff v. Cellular Sales of Knoxville, Inc., No. 19-cv-02642, 2022 WL 309292, at

*2 (E.D. Pa. Feb. 1, 2022)).

Here, the following assertions in the Triedman Declaration refute Plaintiffs' bare

allegations that the LG Defendants were doing business as "Pixelle Specialty Solutions" and

foreclose any grounds for inferring that the Pixelle Defendants and LG Defendants have an alter-

ego relationship:

- "the LG Defendants have never traded as or done business as any company with 'Pixelle' in its name";

- Defendant Lindsay Goldberg has no employees and is merely a contractual counterparty to Defendant Goldberg Lindsay;

- Defendant "Goldberg Lindsay does not provide any services pertaining to the day-to-day operations of portfolio companies or otherwise have any involvement in those activities";

- "No employee of Goldberg Lindsay was involved in the day-to-day operations of Pixelle Specialty or Pixelle Holding"; and

- "[a]ll decisions about day-to-day operations of a portfolio company are the responsibility of employees of that portfolio company."

(Doc. No. 64-1 ¶¶ 5, 10, 11, 19, 21.)  This evidence, moreover, is not challenged by the

information proffered by Plaintiffs, which is silent about the day-to-day operations of the Pixelle

Defendants.  For these reasons, Plaintiffs have failed to meet their burden of establishing that the

Pixelle Defendants are "a mere department of" the LG Defendants, meaning this Court cannot

assert jurisdiction on an alter-ego theory.  See In re Enter. Rent-A-Car Wage & Hour Emp.

Pracs. Litig., 735 F. Supp. 2d at 318; see, e.g., Middleton v. Trans Union, LLC., No. 20-cv-

03756, 2021 WL 3674617, at *6 (E.D. Pa. Aug. 19, 2021) (declining to assert personal

jurisdiction on an alter-ego theory where the plaintiff "fail[ed] to aver facts or come forward with evidence to establish that Sterling Jewelers is merely an alter ego of Signet Jewelers"); Lutz v. Rakuten, Inc., 376 F. Supp. 3d 455, 472 (E.D. Pa. 2019) (concluding that the court does not have personal jurisdiction on an "alter-ego theory" where there was "simply no evidence" that one corporate-entity "actually 'control[ed]' the day-to-day operations" of its subsidiary, even though the two entities "use[d] the same . . . logo for branding purposes" and the parent corporation "own[ed] all the shares" of the subsidiary).

Next, the Court turns to Plaintiffs' agency theory of personal jurisdiction. Plaintiffs' agency theory stems from the following allegations in the TAC: (1) "upon information and belief," the Alleged Pixelle Defendant—including Pixelle Defendants, Defendant H.I.G., and LG Defendants—"contracted with the Tapscott Brothers . . . to transport" the timber to their property at 228 S. Main Street, Spring Grove, PA 17362; (2) the Alleged Pixelle Defendant had "the contractual right to and/or exercised such control over the transportation of the load in question," such that "Mawyer and the Tractor Trailer, that Mawyer, Richards, Tapscott Brothers, and Shenandoah Valley Farms, LLC, should be considered" their agents; and (3) "upon information and belief," "Defendant Tapscott Brothers, with the full knowledge and consent of" the Alleged Pixelle Defendant, "contracted with Defendant [SVF] to transport [the timber]" to "228 S. Main Street, Spring Grove, PA 17362." (Doc. No. 25 ¶¶ 35–37); see also (id. ¶¶ 193, 204) (discussing, in Counts 25 and 27, the conduct of LG Defendants, "by and through" their alleged agents). The following statements from the Triedman Declaration squarely refutes these allegations:

- "No employee of Goldberg Lindsay was involved in the purchase of raw materials for delivery to Pixelle Holding's or Pixelle Specialty's Pennsylvania mill";

- "With respect to the 2021 trucking accident, no employee of Goldberg Lindsay was involved in purchasing or arranging for transporting the timber";

- "No employee of Goldberg Lindsay had any contact with Defendants Mawyer, Richards, Tapscott Brothers, or Shenandoah or was involved in any decision to use their services";

- "Mawyer, Richards, Tapscott Brothers, and Shenandoah were not employees or agents of the LG Defendants"; and

- "No employee of Goldberg Lindsay knew about, controlled, or consented to any of Mawyer, Richards, Tapscott Brothers, or Shenandoah's actions pertaining to transporting this load including on the day of the 2021 trucking accident."

(Doc. No. 64-1 ¶¶ 22–27.)  Moreover, Plaintiffs adduce no evidence to rebut these assertions from the Triedman Declaration.  Accordingly, the Court concludes that Plaintiffs have failed to carry their burden of establishing personal jurisdiction.

Having determined that Plaintiffs have failed to establish personal jurisdiction over LG Defendants, the Court turns to Plaintiffs request for jurisdictional discovery.  A party seeking to establish personal jurisdiction is generally entitled to jurisdictional discovery unless the basis for jurisdiction is "clearly frivolous."  See Shuker v. Smith & Nephew, PLC, 885 F.3d 760, 781 (3d Cir. 2018) (quoting Metcalfe v. Renaissance Marine, Inc., 51 V.I. 1219, 1236, 566 F.3d 324, 336 (3d Cir. 2009)).  However, "[a] plaintiff cannot show up in court with 'bare allegations' and force defendants to start handing over evidence."  See Aldossari ex rel. Aldossari v. Ripp, 49 F.4th 236, 259 (3d Cir. 2022); see also LaSala v. Marfin Popular Bank Pub. Co., 410 F. App'x 474, 478 (3d Cir. 2011) (unpublished) (explaining that the Third Circuit has "cautioned against allowing jurisdictional discovery to serve as 'a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery'" (quoting Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 157 (3d Cir. 2010))).   Instead, a party seeking jurisdictional discovery must "presen[t] factual allegations that suggest 'with reasonable

17

particularity' the possible existence of the requisite 'contacts between [the party] and the forum state.'"  See Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003) (alteration in the original) (quoting Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992)); cf. Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 107 F.3d 1026, 1042 (3d Cir. 1997) (concluding that a "mere unsupported allegation that the defendant 'transacts business' in an area is 'clearly frivolous'" and does not warrant jurisdictional discovery); Rockwell Automation, Inc. v. EU Automation, Inc., No. 21-cv-01162, 2022 WL 1978726, at *12 (D. Del. June 6, 2022), report and recommendation adopted, No. 21-cv-01162, 2022 WL 3576231 (D. Del. Aug. 19, 2022) (explaining that "[i]f a plaintiff does not come forward with 'some competent evidence' that personal jurisdiction over the defendant might exist, a court should not permit jurisdictional discovery to proceed" (quoting Hansen v. Neumueller GmbH, 163 F.R.D. 471, 475 (D. Del. 1995))).

Plaintiffs provide two arguments in support of their request for jurisdictional discovery. The first pertains to their alter-ego theory, which they say warrants discovery because they have alleged a sufficient relationship between the LG Defendants and Pixelle Defendants and because their evidence "indicates that LG Defendants played a more significant management and partnership role with Pixelle Defendants than averred in the Triedman Declaration."  (Doc. No. 75 at 34.)  Their second argument claims that discovery is necessary "to determine . . . whether [LG Defendants'] management team was involved in placing the order of the timber at issue in this case from Tapscott Defendants and in arranging for the transportation of the timber from Virginia to Pixelle Solution's property in Spring Grove, Pennsylvania."  (Id. at 36.)  Plaintiffs rely on Shuker, 885 F.3d at 781–82, in support of the proposition that "where the declarations create a factual dispute regarding the basis for personal jurisdiction," it is appropriate "to allow

the parties and the District Court to revisit the factual issues by means of limited jurisdictional discovery, which [the Third Circuit] 'ordinarily allow[s]' when a plaintiff's claim to personal jurisdiction 'is not clearly frivolous.'"  (Doc. No. 75 at 38 (quoting <u>Shuker</u>, 885 F.3d at 781–82 (cleaned up)).

      Both arguments lack merit.  First, Plaintiffs' alter-ego theory fails because it stems from bare allegations that are made upon mere "information and belief."  <u>See</u> (Doc. No. 25 ¶¶ 22, 25). Such speculative grounds do not amount to particularized factual allegations that warrant jurisdictional discovery.  <u>See, e.g.</u>, <u>Mass. Sch. of L. at Andover, Inc.</u>, 107 F.3d at 1042 (affirming a district court's decision to deny jurisdictional discovery and explaining that (1) "a mere unsupported allegation" asserting jurisdictional prerequisites is "clearly frivolous" and noting that (2) the plaintiff "legitimately cannot allege a nationwide conspiracy and then say, without more evidence, that such a conspiracy must have effects in Pennsylvania"); <u>see also</u> <u>Nugeneration Technologies, LLC</u>, 2023 WL 5020831, at *3 (explaining that a party cannot sustain its burden of establishing personal jurisdiction by relying on "bare assertions made 'upon information and belief'").  And although Plaintiffs insist that their evidence suggests that the "LG Defendants had a partnership role with Pixelle Specialty and its management team and, actively assisted Pixelle in developing and executing on a strategic plan to provide a comprehensive portfolio of specialty paper products in North America" (Doc. No. 75 at 34), the Court finds no inconsistencies between this evidence and the Triedman Declaration, which already states that:

- "[a]t the time of the 2021 trucking accident, Defendant [Pixelle Holding] was a portfolio company of [the Funds], meaning that the Funds had an equity interest in Pixelle Holding";

- "At the time of the 2021 trucking accident, Goldberg Lindsay provided investment management services to the Funds"; and

- "The services provided by Goldberg Lindsay to the funds include identifying, evaluating, structuring, and recommending which portfolio investments be made by the funds, assisting with the disposition of those investments, and providing administrative support to the funds ("investment management services")."

(Doc. No. 64-1 ¶¶ 9, 12–13.)

Second, Plaintiffs' agency theory fails because it similarly relies on bare, speculative allegations.[5]  Specifically, they rely on Plaintiffs' allegations that the Alleged Pixelle Defendant "contracted with the Tapscott Brothers . . . to transport" the timber to their property at 228 S. Main Street, Spring Grove, PA 17362 and that "Defendant Tapscott Brothers, with the full knowledge and consent of" the Alleged Pixelle Defendant, "contracted with Defendant [SVF] to transport [the timber]" to "228 S. Main Street, Spring Grove, PA 17362."  (Doc. No. 25 ¶¶ 35, 37.).  These bare allegations, in addition to being refuted by the Triedman Declaration, are made upon mere information and belief.  As indicated above, such unsupported allegations are too speculative to warrant jurisdictional discovery.  Furthermore, the Court observes that the property located at 228 S. Main Street, Spring Grove, PA 17362 is also the alleged "place of business" for Defendant Pixelle Specialty.  (Id. ¶ 18.)  Accordingly, for Plaintiffs' agency theory to be plausible, the Court would have to accept that (1) each and every one of the Alleged Pixelle Defendants owned Defendant Pixelle Specialty's place of business, or, (2) that all of these Defendants are the same legal entity.  Not only is there no particularized evidence to support either speculative theory, but the latter is foreclosed by the Court's conclusion, supra, that LG

---

[5]  The speculative, non-particularized nature of Plaintiffs' claims is further reflected by the speculative arguments advanced in their brief in opposition.  By way of example, Plaintiffs hypothesize that "if personal jurisdiction exists over . . . Defendants Mawyer, Richards, Tapscott Brothers, and SVF in Pennsylvania, and if any of these Defendants were agents of LG Defendants, as alleged in the TAC, then personal jurisdiction will exist over all the stated Defendants in Pennsylvania."  (Doc. No. 31 at 37.)

Defendants do not share an alter-ego relationship with the Pixelle Defendants, and by the Court's conclusion, infra, that Defendant H.I.G. is not the Pixelle Defendants' successor in interest.

For all of these reasons, the Court concludes that Plaintiffs have failed to offer particularized factual allegations to establish jurisdiction or provide grounds for concluding that additional discovery may establish jurisdiction, the record in this case does not give rise to a "factual dispute regarding the basis for personal jurisdiction" warranting jurisdictional discovery. See Shuker, 885 F.3d at 781.  Accordingly, the Court will deny Plaintiffs' request for jurisdictional discovery and grant the LG Defendants motion to dismiss for lack of personal jurisdiction.  See Aldossari, 49 F.4th at 259 (explaining that allowing the plaintiff to "take discovery," in the absence of "specific facts he might be able to discover that would support the exercise of personal jurisdiction," would "be the launch of a 'fishing expedition'"); see, e.g., Sonicblue Aerospace, Inc. v. Rolls-Royce Holdings PLC, No. 3:21-cv-00122, 2022 WL 2293928, at *8 (W.D. Pa. June 24, 2022) (denying jurisdictional discovery where the grounds "initially cited [by the plaintiff] to confer jurisdiction . . .  were squarely refuted by" the defendants' "affidavit evidence" and where the plaintiff's grounds for requesting discovery were "speculations . . . not based on any factual allegations or evidence"); S. Seafood Co. v. Holt Cargo Sys., Inc., No. 96-cv-05217, 1997 WL 539763, at *8 (E.D. Pa. Aug. 11, 1997) (denying a request for jurisdictional discovery in a "case where [the] counterclaim defendants . . . submitted affidavits attesting to a lack of jurisdictional contacts and [the] counterclaim plaintiffs, who ha[d] the burden of establishing jurisdictional facts, ha[d] countered the affidavits with 'mere speculation'").  With this in mind, the Court turns to Defendant H.I.G.'s Rule 12(b)(2) motion.

### 2.      Defendant H.I.G.'s Rule 12(b)(2) Motion

#### a.      Arguments of the Parties

Defendant H.I.G. argues that "this Court lacks personal jurisdiction over [it] under . . . the TAC's sparse allegations as currently pled."  (Doc. No. 73 at 8.)  Defendant H.I.G. also offers evidence, see infra Section III.A.2.b, that it claims rebuts any grounds for asserting personal jurisdiction.  (Doc. No. 73 at 8.)  In response, Plaintiffs appear to concede that the Court currently lacks a basis for asserting personal jurisdiction over Defendant H.I.G, but seek jurisdictional discovery to establish that Defendant H.I.G. is the Pixelle Defendants' successor in interest.[6]  (Doc. No. 74 at 29.)  Plaintiffs offer the same information from Defendant Pixelle Specialty's website considered, supra, in connection with the LG Defendants' Rule 12(b)(2) motion.

#### b.      The Parties' Evidence

In support of its Rule 12(b)(2) motion, Defendant H.I.G. submits an affidavit prepared by its General Counsel and Chief Compliance Officer, Richard Siegel ("Siegel Declaration").  (Doc. No. 65-3.)  In relevant part, the Siegel Declaration states that:

- "H.I.G. provides investment management, advisory, and other related services to investment funds that invest primarily in privately held and some publicly held businesses, referred to generally as platform or portfolio companies";

---

[6]  Specifically, Plaintiffs recognize that they "must respond with actual proofs, [and] not mere allegations" to establish personal jurisdiction in light of Defendant H.I.G.'s well-supported motion, but then rely on their allegations—and offer no facts—to request jurisdictional discovery.  See (Doc. No. 74 at 18, 22).  Additionally, although they appear to seek jurisdictional discovery based on the same agency theory discussed in connection with the LG Defendant's motion, Defendant H.I.G.'s evidence, see infra Section III.A.2.b, shows that Defendant H.I.G. only acquired stake in the Pixelle Defendants after the accident.  Thus, the Court will not reach any agency theory unless Plaintiffs establish that Defendant H.I.G. is the Pixelle Defendants' successor in interest.

- "The investment funds, which are set up as limited partnerships . . . are each managed and advised by H.I.G., but each investment fund is a separate and distinct legal entity from H.I.G.";

- H.I.G. is neither registered to do business in Pennsylvania nor has "any employees who primarily work in Pennsylvania";

- "One of the funds H.I.G. sponsors and provides investment management services to is an entity called . . . 'Middle Market III'[]";

- "[W]ell after the accident alleged in the [operative] Complaint occurred," Middle Market III, a Delaware limited partnership, "invested in a Delaware limited partnership investment vehicle managed by H.I.G. named . . . 'Spectrum II'[]";

- "Spectrum II then indirectly acquired an equity interest in a third-tier subsidiary known as . . . 'Buyer'[]";

- "Buyer ultimately acquired the membership units in what would become its own third-tier subsidiary known as Pixelle Specialty Solutions Holding, LLC . . . from . . . Lindsay Goldberg";

- Pixelle Specialty Solutions Holding, LLC—a defendant in this case— "continues to operate and exist as a separate legal entity today";

- Defendant Pixelle Holding has a second-tier subsidiary, Defendant Pixelle Specialty, that "continues to operate today as its own separate legal entity";

- "All decisions concerning the day-to-day activities of an H.I.G. portfolio company, like Pixelle, are the responsibility of the officers, managers, and other employees of that portfolio company";

- "Neither H.I.G. nor Middle Market III, or Spectrum II for that matter, are involved in the management or day-to-day activities" of the Pixelle Defendants;

- "The trucking accident giving rise to the [operative] Complaint in this action occurred more than a year before" the Pixelle Defendants "became a portfolio company of an H.I.G. managed investment fund";

- "H.I.G. has never traded as or done business as either Pixelle Holding or Pixelle Specialty";

- "H.I.G. has never traded as or done business as any company with Pixelle in its name"; and

- "H.I.G. is a separate legal entity from" the Pixelle Defendants, "both of whom continue to operate today as their own separate legal entities."

(Id. ¶¶ 3–4, 6–8, 10–18, 21–23.)

The information from Defendant Pixelle Specialty's website, discussed, supra, is incorporated by reference.

### c.    Analysis

Whether the Court can assert personal jurisdiction over Defendant H.I.G. turns on the merits of Plaintiffs' successor-in-interest theory.  Although successor-in-interest theories of personal jurisdiction are supported under Pennsylvania law, courts have consistently explained that "[i]f the original entity still exists," then "there is no successor, and therefore, no successor liability."  See Norfolk S. Ry. Co. v. Pittsburgh & W. Virginia R.R., 153 F. Supp. 3d 778, 807 (W.D. Pa. 2015) (collecting cases).  An exception to this rule is where the original entity exists but has been "reduc[ed] to an assetless shell[.]"  See Chicago Title Ins. Co. v. Lexington & Concord Search & Abstract, LLC, 513 F. Supp. 2d 304, 315 (E.D. Pa. 2007).

Recognizing that the Pixelle Defendants still "exist" and are parties to this case, Plaintiffs appear to seek jurisdictional discovery to show that these defendants are now assetless shells. But once again, they have failed to offer sufficiently particularized factual allegations to support their theory.  Additionally, nothing in the record suggests that jurisdictional discovery will substantiate Plaintiffs' suggestion that the Pixelle Defendants are assetless shells.  Indeed, not only does the Siegel Declaration assert that the Pixelle Defendants operate and exist as separate entities today (Doc. No. 65-3 ¶¶ 13–15)—as evinced by the fact that they have their own pending motion to dismiss and are represented by a different law firm than Defendant H.I.G. (Doc. No. 66)—but the evidence offered by Plaintiffs from Defendant Pixelle Specialty's website states that "Pixelle has developed a broad, innovative portfolio of industry leading brands across the

24

specialty papers and sustainable packaging markets." (Doc. No. 75 at 32–33.) In this regard, Plaintiffs' speculative successor-in-interest theory is also refuted by its own evidence.[7] For these reasons, the Court will deny their request for jurisdictional discovery and grant Defendant H.I.G.'s Rule 12(b)(2) motion.

Having resolved the LG Defendants' and Defendant H.I.G.'s Rule 12(b)(2) motions, the Court turns to the remaining Defendants' arguments that Plaintiff's operative complaint should be dismissed for failure to comply with Rule 8.

**B.    The Pixelle Defendants' and Defendant SVF's Rule 8 Motions**

**1.    Arguments of the Parties**

The Pixelle Defendants and Defendant SVF argue that the TAC violates Rule 8 because of its length and complexity and because it asserts multiple counts that incorporate all preceding paragraphs by reference. (Doc. Nos. 67 at 11; 73 at 26; 68 at 5–6.) More specifically, the Pixelle Defendants argue that the TAC "quite egregiously violates the mandate of Rule 8 that pleadings be 'short and plain'" because "[i]t runs to 297 pages, with 225 paragraphs (and up to 53 subparagraphs to many of the paragraphs), repeated word for word, over and over again, against multiple defendants, and incorporating each in subsequent paragraphs"—thereby placing "an unfair burden on responding parties to boil down the claims and respond only to its relevant material." (Doc. No. 67 at 11–12.) Defendant SVF, in turn, similarly challenges the length of the complaint and contends that "[e]ach fount of Plaintiffs' [TAC] incorporates the preceding

---

[7] Plaintiffs also "request the Court to allow them to conduct jurisdictional discovery to see if there is any evidence that suggests Defendant H.I.G. can be held liable as the alter ego of Pixelle Specialty and/or Pixelle Holding and, whether H.I.G. can be held liable for the acts of Pixelle Defendants." (Doc. No. 74 at 30.) The request itself is speculative, stemming from a single, unsupported paragraph in Plaintiffs' brief in opposition that does not appear to have any basis in the TAC.

paragraphs by reference." (Doc. No. 68 at 5.)  And because the "averments . . . [in the TAC] are repetitive, rambling, unclear and unnecessarily complicated as the same allegations are repeated word for word, many times over, against each Defendant," Defendant SVF contends that the TAC is an "unduly burdensome tome, which alleges everything against everyone" and "unnecessarily requires hours to read and discern, and challenges the pleader's ability to respond." (Id. at 6.)

In response, Plaintiffs provide three primary arguments for why the TAC should not be dismissed under Rule 8.  First, they emphasize that the length of a complaint is not dispositive under Rule 8; rather, the question is whether a pleading provides adequate notice of the claims and the grounds upon which they rest.  (Doc. No. 76 at 39; 77 at 17.)  Second, they explain that incorporating allegations by reference is a common pleading practice and does not prejudice the Pixelle Defendant or Defendant SVF because they do not need to respond to any averments that do not pertain to it.  (Doc. No. 76 at 40; 77 at 19.)  Finally, Plaintiffs argue that the incorporated paragraphs here do not cause prejudice because each count also includes defendant-specific allegations that provide adequate notice of the pending claims.  (Doc. Nos. 76 at 38–40; 77 at 17–20).

## 2.     Analysis

Upon careful review of the TAC, the parties' briefs, and the relevant authority, the Court concludes that Plaintiffs' 297-page complaint is neither short nor plain for purposes of Rule 8. As to the length of the operative complaint, the Court first considers the nature of the above-captioned action—a car crash at an intersection.  Despite the number of Defendants in the above-captioned action and the claims asserted, this case does not involve a special matter that requires especially particularized pleadings.  Cf. Fed. R. Civ. P. 9 (explaining that "[i]n alleging fraud or

mistake, a party must state with particularity the circumstances constituting fraud or mistake"). Yet, Plaintiffs' complaint spans 297 pages and contains 225 unwieldy paragraphs with hundreds of subparagraphs that assert an array of factual allegations and purported statutory violations.  By way of example:

- Paragraphs 95, 129, 146, 163, 180, and 214 each contain 10 pages of subparagraphs that lump together factual assertions and statutory violations (Doc. No. 25 ¶¶ 95, 129, 146; 163, 180, 214);

- Paragraphs 112 contains approximately 8 pages of subparagraphs that lump together factual assertions and statutory violations (id. ¶ 112);

- Paragraphs 62, 76, 77, 94, 111, 145, 162, 179, 196, and 213 each contain 5 pages of subparagraphs that lump together factual assertions and statutory violations (id. ¶¶ 62, 76, 77, 94, 111, 145, 162, 179, 196, 213);

- Paragraphs 105, 139, 156, 173, 190, 207, and 224 do not include subparagraphs, but each extends to 7 pages of factual assertions and statutory violations (id. ¶¶ 105, 139, 156, 173, 190, 207, 224);

- Paragraphs 123 and 172 similarly do not include subparagraphs, but each extends to 5 pages of factual assertions and statutory violations (id. ¶¶ 123, 172); and

- Paragraphs 70, 86, 88, 103, 120, 188, 205, and 222 similarly do not include subparagraphs, but each extends to 3 pages of factual assertions and statutory violations (id. ¶¶ 70, 86, 103, 120, 188, 205, 222).

The Court fails to see why the circumstances of this case warrant such a lengthy and complex complaint.[8]  Plaintiffs, moreover, fail to provide any convincing arguments to justify such an "excessively and burdensomely factual complaint."  See Thompson, 2016 WL 7046959, at *2. Accordingly, the Court concludes that the TAC is not "short" under Rule 8(a)(2).

---

[8] This is especially so when considering that over one-hundred (100) pages of the TAC stem from ten (10) distinct counts for "Punitive Damages"—even though this Court has previously informed Plaintiffs that "punitive damages are a remedy, not a separate cause of action."  (Doc. No. 10 n.1); see (Doc. Nos. 25 at 20, 38, 66, 95, 124, 156, 188, 220, 252, 284).

The Court also concludes that the TAC is a shotgun pleading that cannot be considered "plain" under Rule 8(a)(2).  Shotgun pleadings, as already discussed, violate Rule 8(a)(2) because they deprive defendants of adequate notice of the plaintiff's claims and the grounds upon which they rest.  Plaintiffs' TAC is a shotgun pleading because each count indiscriminately incorporates all previous counts without regard for the particular defendant or the asserted claim. See Bartol, 251 F. Supp. 3d at 859 (explaining that a "complaint containing multiple counts where each count adopts the allegations of all preceding counts" is a shotgun pleading under the first category identified in Weiland (quoting Weiland, 792 F.3d at 1321)).  The result is "a logarithmic expansion of paragraphs [where] each count incorporates previous incorporations that themselves incorporated incorporations," see Gov't Emps. Ins. Co. v. Pennsauken Spine & Rehab P.C., No. 17-cv-11727, 2018 WL 3727369, at *3 (D.N.J. Aug. 6, 2018), which unfairly burdens the remaining Defendants.  See, e.g., TriNet USA, Inc. v. Vensure Emp. Servs., Inc., No. 8:20-cv-02018, 2021 WL 1060178, at *1 (M.D. Fla. Mar. 18, 2021) (concluding that an amended complaint is a shotgun pleading of the "first category identified in Weiland because the claims against "[Defendant] Vensure – Counts III, VI, VII, and VII – roll all preceding allegations into every count," including "all of the facts in the body of the complaint, as well as the allegations in Count I and II, which were filed only against" a separate defendant); see also Hamilton v. County of Madera, No. 12-cv-00484, 2021 WL 1577819, at *5–6 (E.D. Cal. Apr. 22, 2021), report and recommendation adopted, No. 12-cv-00484, 2021 WL 2651754 (E.D. Cal. June 28, 2021) (concluding that the plaintiff's second amended complaint, which was  "110 pages long," "contains 483 paragraphs of allegations and requests for relief," and asserted several claims that incorporated "all previous allegations by reference in paragraph" was an "improper 'shotgun' pleadin[g] that d[id] not contain 'a short and plain statement of the claim

28

showing that the pleader is entitled to relief'" under Rule 8).   For these reasons, the Court

concludes that the TAC is neither short nor plain under Rule 8 and will thus dismiss it without

prejudice.

In reaching this conclusion, the Court rejects Plaintiffs' argument that, because

complaints frequently incorporate allegations by prior reference and each count here includes

defendant-specific allegations that provide adequate notice of the pending claims, the TAC does

not substantively violate Rule 8.  Plaintiffs' argument is unavailing for two reasons.  First,

adding particularized allegations to counts that incorporate all preceding allegations does not

obviate Defendants' need to sort through incorporated counts that, in turn, have incorporated

other incorporated counts.  Second, while a "complaint may incorporate by reference any prior

paragraphs that are necessary to pleading a plausible cause of action, [it] may not use the

improper expedient of simply incorporating by reference all prior paragraphs, be they supportive

or relevant to the cause of action or not, since such a practice does not provide adequate notice

for purposes of Rule 8."  See Caruso v. Hill, No. 12-cv-00084, 2020 WL 4018141, at *11 (E.D.

Cal. July 15, 2020) (emphasis added).  Here, Plaintiffs do not explain why the above-captioned

action requires incorporating by reference each and every preceding count regardless of the

claim asserted against the particular Defendant.[9]  See Lapella v. City of Atl. City, No. 10-cv-

_____

[9]  Although Plaintiffs rely on Burns v. City of Bayonne— which they claim held that "despite the
fact 'each count of Plaintiff's Complaint contains the statement 'incorporating by reference' all
previous allegations,' 'there is no question that each count of a properly pled complaint must
contain: (a) its own cause of action against a clearly identified defendant(s), and (b) those
particular factual allegations that would allow the court to draw the reasonable inference that the
defendant is liable for that cause of action'" (Doc. Nos. 76 at 40; 77 at 19 (quoting Burns v. City
of Bayonne, No. 12-cv-06075, 2013 WL 3790305, at *7 (D.N.J. July 19, 2013)))—the Burns
decision does not support their argument.  Burns did not find that a complaint complied with
Rule 8 despite being a shotgun pleading; rather, it dismissed the plaintiff's complaint and
indicated that it was a shotgun pleading.  See Burns, 2013 WL 3790305, at *7 (citing Anderson
v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996) (explaining that

02454, 2012 WL 2952411, at *5 n.3 (D.N.J. July 18, 2012) (rejecting the "[p]laintiff's argument that such incorporation is required under" Rule 8 and explaining that, "[b]y incorporating all preceding allegations into each count, [the] [p]laintiff engages in shotgun pleadings that obfuscate her claims and defy the mandate of Rule 8, denying Defendants of the fullest extent of notice to which they are entitled").  Nor can the Court find a justification for such an approach, especially given the unwieldy nature of Plaintiffs' TAC.  For all of these reasons, the Court will dismiss Plaintiffs' TAC <u>without</u> prejudice and direct them to file a fourth complaint that remedies the deficiencies identified above.  <u>See</u> <u>In Re Westinghouse Securities Litig.</u>, 90 F.3d at 703 (explaining that a district court's decision to order the plaintiffs to submit an amended complaint "containing only those allegations relevant to what were, in the court's view, the remaining claims" did "not seem . . . to constitute an abuse of discretion; indeed, it ma[de] a tremendous amount of sense"); <u>see, e.g.</u>, <u>Litwak v. Tomko</u>, No. 3:16-cv-00446, 2018 WL 1378633, at *5 (M.D. Pa. Mar. 19, 2018) (explaining that the [p]laintiff's Third Amended Complaint remains a shotgun pleading" because it, <u>inter alia</u>, "contains multiple counts where each count adopts the allegations of all preceding counts").

---

"Anderson's complaint is a perfect example of 'shotgun' pleading in that it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief")).

**IV.    CONCLUSION**

For the foregoing reasons, the Court will (1) grant the LG Defendants and Defendant H.I.G.'s Rule 12(b)(2) motions (2) grant the remaining Defendants' Rule 8 motions.  The Court will dismiss the TAC without prejudice to Plaintiffs' opportunity to file a fourth amended complaint that remedies the pleading deficiencies identified in this Memorandum.  An appropriate Order follows.

s/ Yvette Kane_____
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania
