## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL E. FUHRMAN, <u>et al.</u>, | : | |
| **Plaintiffs** | : | No. 1:21-cv-02024 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| BRIAN A. MAWYER, <u>et al.</u>, | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Before the Court are motions to dismiss Plaintiffs Michael E. Fuhrman and Linda M. Angel, Co-Executors of the Estate of their father, Eugene V. Fuhrman ("Plaintiffs")'s, Fourth Amended Complaint ("FAC") (Doc. No. 85) filed by Defendants Pixelle Specialty Solutions, LLC and Pixelle Specialty Solutions Holding, LLC (the "Pixelle Defendants") (Doc. No. 90) and Defendant Shenandoah Valley Farms, LLC ("Defendant SVF") (Doc. No. 88). Also before the Court are the Pixelle Defendants' alternative motion to strike (Doc. No. 92) and Defendant SVF's motion to strike (Doc. No. 100) the crossclaim asserted against it by Defendants Brian A. Mawyer ("Defendant Mawyer"), Charles R. Richards t/a d/b/a B&C Enterprise ("Defendant Richards"), and Tapscott Brothers Trucking, Inc. and Tapscott Brothers Logging, Inc. (the "Tapscott Defendants") (collectively, "Cross Claimants"). For the reasons that follow, the Court will grant the pending motions to dismiss and strike.

## I.    BACKGROUND[1]

The facts of the FAC mirror those of the original complaint and are detailed in this Court's September 1, 2023 Memorandum.  (Doc. No. 83 at 2–3.)  Plaintiffs allege that Defendant Mawyer negligently operated a tractor owned by Defendant Richards, with a trailer carrying timber owned by the Tapscott Defendants, in route to a property owned by the Pixelle Defendants.  (Doc. No. 85 ¶¶ 26–28, 37.)  Tragically, Plaintiffs' Decedent was struck by Defendant Mawyer's tractor trailer at an intersection in Hanover, Pennsylvania and died from the sustained injuries.  (Id. ¶¶ 47–48.)

On December 2, 2021, Plaintiffs initiated the above-captioned action on behalf of Decedent by filing a complaint in this Court against Defendants Mawyer, Richards, and Tapscott Brothers Trucking, Inc. (collectively, "Original Defendants") (Doc. No. 1) asserting the same three claims against each of the Original Defendants: survival, wrongful death, and punitive damages.[2]

On February 21, 2023, the parties stipulated to the filing of a second amended complaint (Doc. No. 21), which added Defendant SVF as a party and asserted survival, wrongful death, and punitive damages claims against it (Doc. No. 22).  On February 22, 2023, the parties stipulated to the filing of a third amended complaint (Doc. No. 24), which added Tapscott Brothers Logging Inc. ("Tapscott Logging"), Pixelle Specialty Solutions, LLC, Pixelle Specialty Solutions

---

[1]  The factual background is drawn from Plaintiffs' FAC (Doc. No. 85), the allegations of which the Court accepts as true for purposes of the pending motions to dismiss.  See Kedra v. Schroeter, 876 F.3d 424, 434 (3d Cir. 2017).

[2]  On January 31, 2022, the Original Defendants filed a motion to dismiss and a motion for a more definite statement.  (Doc. No. 7.)  On June 28, 2022, the Court denied the motion to dismiss, but granted, in part, the motion for a more definite statement and provided Plaintiffs twenty-one (21) days to file an amended complaint.  (Doc. No. 11.)  Plaintiffs filed a first amended complaint on July 15, 2022.  (Doc. No. 12.)

Holding, LLC, H.I.G. Capitol, LLC,[3] Lindsay Goldberg, LLC, and Goldberg, Lindsay & Co., LLC[4] as parties and asserted survival, wrongful death, and punitive damages claims against each Defendant (Doc. No. 25).[5]

On September 1, 2023, the Court issued a Memorandum and Order: (1) granting the LG Defendants' motion to dismiss for lack of personal jurisdiction; (2) granting H.I.G. Capitol, LLC's motion to dismiss for lack of personal jurisdiction; (3) granting Defendant SVF's motion to strike Plaintiffs' TAC under Federal Rule of Civil Procedure 8; (4) granting the Pixelle Defendants' motion to strike Plaintiffs' TAC pursuant to Federal Rule of Civil Procedure 8; (5) dismissing Plaintiffs TAC without prejudice; and (6) providing Plaintiffs twenty-one (21) days to file a fourth amended complaint.  (Doc. Nos. 83, 84.)  In its Order, the Court directed Plaintiffs to "remedy the deficiencies identified in the corresponding Memorandum" in their fourth amended complaint.  (Doc. No. 84)[6]

---

[3]  In the TAC, Plaintiffs asserted that "H.I.G. Capitol, LLC is the successor in interest to Pixelle Specialty Solutions, LLC and/or Pixelle Specialty Solutions Holding, LLC."  (Doc. No. 25 at 6.)

[4]  The Court will refer to Lindsay Goldberg, LLC, and Goldberg, Lindsay & Co., LLC as the ("LG Defendants").

[5]  The Original Defendants filed an answer to the TAC with affirmative defenses on March 31, 2023 (Doc. No. 36), and Defendant Tapscott Logging filed an answer with affirmative defenses on April 28, 2023 (Doc. No. 54).  On May 19, 2023, Defendant SVF filed a motion to dismiss the TAC.  (Doc. No. 60.)  Defendant SVF's motion to dismiss requested an order: striking the TAC under Rules 8(a)(2) and 12(f) for failing to provide a short and plain pleading; dismissing the TAC for failing to state a claim under Rule 12(b)(6); or in the alternative, directing Plaintiffs to file a more definite statement under Rule 12(e).  (Id.)  The LG Defendants filed a motion to dismiss and cited two grounds in support of their motion: failure to comply with Rule 8, and lack of personal jurisdiction under Rule 12(b)(2).  (Doc. No. 63.)  On May 26, 2023, H.I.G. Capitol, LLC filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  (Doc. No. 65.)  Finally, the Pixelle Defendants filed a motion to strike the TAC under Rule 8 and to dismiss Plaintiffs' claims under Rule 12(b)(6).  (Doc. No. 66.)

[6]  The Court found that Plaintiffs' TAC was a shotgun pleading, violating Federal Rule of Civil Procedure 8(a)(2)'s requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief."  See (Doc. No. 83 at 28); see also Fed. R. Civ. P. 8(a)(2).

On September 22, 2023, Plaintiffs filed the FAC, asserting survival and wrongful death claims against all Defendants.[7]  (Doc. No. 85.)  Plaintiffs' FAC asserts fourteen (14) counts of negligence, as follows: Counts One and Two against Defendant Mawyer; Counts Three and Four against Defendant Richards t/a d/b/a B&C Enterprise; Counts Five and Six against Tapscott Brothers Trucking, Inc.; Counts Seven and Eight against Defendant SVF; Counts Nine and Ten against Tapscott Brothers Logging, Inc.; Counts Eleven and Twelve against Pixelle Specialty Solutions, LLC; and Counts Thirteen and Fourteen against Pixelle Specialty Solutions Holding, LLC.  (Doc. No. 85.)  As noted supra, despite labeling each count as either a survival or wrongful death action under Pennsylvania law, Plaintiffs are essentially asserting negligence claims against all Defendants.  See Johnson, 105 F. Supp. 3d at 483 (holding that "wrongful death and survival actions are not substantive causes of action").  The FAC contains three principal theories of negligence against each of the moving Defendants.  First, the FAC alleges that the moving and non-moving Defendants formed a joint venture and thus the moving Defendants should be liable for any negligent acts committed by their co-venturers.  (Doc. No. 85 ¶¶ 29–32.)  Next, the FAC asserts that the moving Defendants should be vicariously liable for the conduct of Defendant Mawyer, because the moving Defendants and Defendant Mawyer were in a principal-agent relationship that permits the imputation of liability.  (Id. ¶ 25.)  Finally, the

---

[7]  The FAC seeks remedies pursuant to Pennsylvania's wrongful death statute, 42 Pa. C.S.A. § 8301 (Counts II, IV, VI, VIII, X, XII, XIV) and survival statute, id. § 8302 (Counts I, III, V, VII, IX, XI, XIII).  (Doc. No. 85 at 11–101.)  Pursuant to Pennsylvania law, "wrongful death and survival actions are not substantive causes of action; rather, they provide a vehicle through which plaintiffs can recover for unlawful conduct that results in death."  See Johnson v. City of Philadelphia, 105 F. Supp. 3d 474, 483 (E.D. Pa. 2015) (citation omitted), aff'd, 837 F.3d 343 (3d Cir. 2016).  Accordingly, Plaintiffs' FAC essentially asserts negligence claims against all Defendants.

FAC contains allegations that each of the moving Defendants are directly negligent for the death of Plaintiffs' Decedent.  (Id. ¶¶ 84–87, 104–107, 114–117.)

On October 6, 2023, the Tapscott Defendants and Defendants Mawyer and Richards filed answers to the FAC, while also asserting crossclaims against the Pixelle Defendants and Defendant SVF.   (Doc. Nos. 86, 87.)  On October 12, 2023, Defendant SVF filed a motion to dismiss Plaintiffs' FAC, pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(f), and 8(a)(2).  (Doc. No. 88.)  On October 18, 2023, the Pixelle Defendants filed a motion to dismiss Plaintiffs' FAC pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 90.)  In the alternative, the Pixelle Defendants filed a motion to strike under Federal Rule of Civil Procedure 8(a)(2).  (Doc. No. 92.)  On October 26, 2023, Defendant SVF filed a motion to strike the crossclaims of Defendants Mawyer, Richards, t/a d/b/a B&C Enterprise pursuant to Federal Rule of Civil Procedure 12(f), or, in the alternative, for a more definite statement under Federal Rule of Civil Procedure 12(e).  (Doc. No. 100.)  All moving Defendants filed briefs in support of their motions.  (Doc. Nos. 89, 91, 93, 101.)  Plaintiffs filed briefs in opposition.  (Doc. Nos. 105, 106.)  The Cross Claimants also filed a brief (Doc. No. 104) opposing Defendant SVF's motion to strike their cross claims.  No reply briefs were filed, and the time for doing so has passed.  Having been fully briefed, the pending motions are ripe for disposition.

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  See Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure

8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 312 (3d Cir. 2010).  The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).  Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading."  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible.  See id.  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  As the Supreme Court instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster

6

Township, 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

### B.  Motion to Strike Under Federal Rule of Civil Procedure 12(f)

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." See Fed. R. Civ. P. 12(f).  "'Immaterial' matter is that which has no essential or important relationship to the claim for relief." Del. Health Care Inc. v. MCD Holding Co., 893 F. Supp. 1279, 1292 (D. Del. 1995).  "'Impertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." Cech v. Crescent Hills Coal Co., No. 96-cv-02185, 2002 WL 31002883, at *28 (W.D. Pa. July 15, 2002).  "A 'scandalous' matter or pleading is one that casts a derogatory light on someone, uses repulsive language, or detracts from the dignity of the court." Carone v. Whalen, 121 F.R.D. 231, 232 (M.D. Pa. 1988).  While courts are specifically empowered with the ability to invoke Rule 12(f) sua sponte, striking a pleading is a drastic remedy and should be used sparingly.  See Krisa v. Equitable Life Assurance Soc'y, 109 F. Supp. 2d 316, 319 (M.D. Pa. 2000).  "Motions to strike are decided on the pleadings alone, and should not be granted unless the relevant insufficiency is 'clearly apparent.'" Thomas v. Keystone Real Estate Grp., No. 14-cv-00543, 2015 WL 1471273, at *6 (M.D. Pa. Mar. 31, 2015) (quoting Cipollone v. Liggett Grp., Inc., 789 F.2d 181, 188 (3d Cir. 1986)).  Therefore, as a general rule, motions to strike are disfavored, and "should be denied unless the challenged

7

allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some significant form of prejudice to one of the parties to the action." See Mifflinburg Tel., Inc. v. Criswell, 80 F. Supp. 3d 566, 572 (M.D. Pa. 2015) (citations omitted); Powell v. Wetzel, No. 12-cv-02455, 2014 WL 2472048, at *4 (M.D. Pa. Feb. 25, 2014) (citations omitted); Trivedi v. Slawecki, No. 11-cv-02390, 2013 WL 1767593, at *2 (M.D. Pa. Apr. 24, 2013) (citations omitted).

## III.   DISCUSSION

Plaintiffs' FAC asserts negligence claims against each of the moving Defendants, relying on three principal theories of liability.  Counts Seven, Eight, Eleven, Twelve, Thirteen and Fourteen allege that each of the moving Defendants are directly negligent for the death of Plaintiffs' Decedent, or in the alternative, that liability can be imputed from Defendants Mawyer, Richards and the Tapscott Defendants to each of the moving Defendants under traditional agency principals or as co-venturers to a joint venture.  The Court examines each theory and the moving Defendants motions to dismiss in turn.

### A.   Direct Negligence Under Pennsylvania Law

Under Pennsylvania law, the plaintiff bears the burden of establishing "negligence on the part of the defendant by proving four elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." See Est. of Swift v. Ne. Hosp. of Philadelphia, 690 A.2d 719, 722 (Pa. Super. Ct. 1997).  Thus, establishing the breach of a legal duty "is a condition precedent to a finding of negligence." See Shaw v. Kirschbaum, 653 A.2d 12, 15 (Pa. Super. Ct. 1994).  More specifically:

> [t]o establish a viable cause of action in negligence, the pleader must aver in his complaint the following elements:

1.      A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks;

2.      A failure on the person's part to conform to the standard required: a breach of the duty;

3.      A reasonably close causal connection between the conduct and the resulting injury; and

4.      Actual loss or damage resulting to the interest of another.

See Ferry v. Fisher, 709 A.2d 399, 402 (Pa. Super. Ct. 1998) (punctuation added).  "The act or omission relied on as negligence must be alleged either in direct and positive terms, or by setting out facts from which the fact of negligence can fairly and legally be inferred."  Arner v. Sokol, 96 A.2d 854, 854 (Pa. 1953) (citation omitted).  Upon review of the FAC, relevant authority, and briefs of the parties, the Court finds that Plaintiffs have failed to meet their burden and did not sufficiently state facts supporting a direct negligence claim against the moving Defendants.

Regarding a "duty or obligation recognized by law," see Est. of Swift, 690 A.2d at 722, the Court recognizes that generally "the driver of a vehicle owes a duty of care to all motorists and pedestrians in his immediate zone of danger and to any bystander who experiences a contemporaneous observance of an injury to a close relative."  See Mazzagatti v. Everingham by Everingham, 516 A.2d 672, 679 (Pa. 1986).  Here, Plaintiffs allege that each moving Defendant "owed a duty of care to Plaintiffs' Decedent" (Doc. No. 85 at ¶¶ 85, 105, 115), because he was a fellow motorist in the "immediate zone of danger" of Defendant Mawyer, see Mazzagatti, 516 A.2d at 679.  However, Plaintiffs make this averment on the premise that the moving Defendants are each vicariously liable for Defendant Mawyer's acts and omissions.  Plaintiffs do not name any other agents or employees of each of the moving Defendants who may have been negligent or owed a duty to Plaintiffs' Decedent.  Plaintiffs' FAC, in averring the duties owed by each of

the moving Defendants, simply states that they each "owed a duty of care to Plaintiffs'

Decedent." (Doc. No. 85 at ¶¶ 85, 105, 115.) However, "[w]hile a complaint attacked by a Rule

12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." See Twombly, 550 U.S. at

555. Accordingly, the Court is unpersuaded that Plaintiffs' FAC sufficiently sets out facts which

plausibly plead the first element of a direct negligence claim against all the moving Defendants.

Assuming arguendo that Plaintiffs could sufficiently plead facts supporting the first

element of a negligence claim, the Court further finds that Plaintiffs' FAC does not set out facts

explaining how any of the moving Defendants breached any duty to Plaintiffs. The FAC simply

presumes vicarious liability and lists statutes violated by Defendant Mawyer in operating the

tractor trailer. The FAC states that "[e]ach Defendant acted in a manner that either alone or

combined and occurring with the actions of other Defendants' acts of negligence, directly and

proximately caused the [c]rash and the resulting injuries to the Plaintiffs." (Doc. No. 85 ¶ 52.)[8]

This paragraph of Plaintiffs' FAC also represents a conclusory legal assertion, devoid of facts,

and not entitled to the assumption of truth, see Santiago, 629 F.3d at 130, in evaluating the

moving Defendants respective motions to dismiss the FAC. In summary, the Court finds that

Plaintiffs' FAC fails to set forth a sufficient factual basis supporting a direct claim of negligence

against the moving Defendants.

Because Plaintiffs' FAC fails to set forth any viable claim for the moving Defendants'

direct negligence, the Court next looks at whether Plaintiffs' FAC sufficiently pleads facts

---

[8] Notably, this assertion seems to refer both to the second and third elements of Plaintiffs' negligence claim.

supporting imposition of vicarious liability from Defendants Mawyer, Richards and the Tapscott

Defendants to the moving Defendants.[9]

### B.    Imposition of Vicarious Liability

Besides alleging that a defendant was the directly negligent party, a plaintiff may also

choose to assert a claim of vicarious liability.  The Supreme Court of Pennsylvania explained

that:

> [v]icarious liability, sometimes referred to as imputed negligence, means in its simplest form that, by reason of some relation existing between A and B, the negligence of A is to be charged against B although B has played no part in it, has done nothing whatever to aid or encourage it, or indeed has done all that he possibly can to prevent it.

See Crowell v. City of Philadelphia, 613 A.2d 1178, 1181 (Pa. 1992) (citation omitted).

Additionally,

> [t]he rules of vicarious liability respond to a specific need in the law of torts: how to fully compensate an injury caused by the act of a single tortfeasor.  Upon a showing of agency, vicarious liability increases the likelihood that an injury will be compensated, by providing two funds from which a plaintiff may recover.  If the ultimately responsible agent is unavailable or lacks the ability to pay, the innocent victim has recourse against the principal.

See Mamalis v. Atlas Van Lines, Inc., 560 A.2d 1380, 1383 (Pa. Super. Ct. 1989).  The

imputation of vicarious liability requires a claimant to set forth a principal-agency relationship.

See id.  "An agent is one who acts in the place and stead of another."  Commonwealth v. Britton,

229 A.3d 590, 598 (Pa. 2020) (citing Valentine v. Packer, 5 Pa. 333, 334 (1847)).  To establish

such a relationship, the plaintiff must aver facts indicating a "manifestation by the principal that

the agent shall act for him, the agent's acceptance of the undertaking and the understanding of

---

[9]  Because the Court finds that Plaintiffs' FAC insufficiently pleads the elements of a direct negligence claim against any of the moving Defendants, the Court will not address the punitive damages question.

the parties that the principal is to be in control of the undertaking." See McIlwain v. Saber

Healthcare Grp., Inc., LLC, 208 A.3d 478, 485 (Pa. Super. Ct. 2019).  Further, to impute liability

from the agent to the principal, a plaintiff must allege that the agent (or employee) was acting

within the scope of the agency relationship and in furtherance of the principal's interests at the

time of the act giving rise to the injury of a third party.  See Gill v. Wilkes-Barre Pub. Co., 30 Pa.

D. & C.2d 251, 253 (Luzerne Cnty. Ct. Com. Pl. 1963).  The Supreme Court of Pennsylvania

further explained that:

> [i]n the context of vicarious liability, a principal is liable to third parties for the
> frauds, deceits, concealments, misrepresentations, torts, negligent acts and other
> malfeasances of his agent, even though the principal did not authorize, justify,
> participate in or know of such conduct or even if he forbade the acts or disapproved
> of them, as long as they occurred within the agent's scope of employment. This rule
> of liability is based on the premise that it is more reasonable for a principal, who
> has placed the agent in the position of trust and confidence, to be the one to suffer
> from the wrongful act of a third person, as opposed to an innocent stranger.

See McLaughlin v. Nahata, 298 A.3d 384, 396 (Pa. 2023).[10]  As a general matter, "[a] principal

and agent can be in the relationship of a master and servant, or simply in the status of two

independent contractors."  See Juarbe v. City of Philadelphia, 431 A.2d 1073, 1075–76 (Pa.

Super. Ct. 1981).  In an independent contractee-contractor relationship, "the person engaged in

the work has the exclusive control of the manner of performing it, being responsible only for the

result."  See Myszkowski v. Penn Stroud Hotel, Inc., 634 A.2d 622, 626 (Pa. Super. Ct. 1993).

This is a relevant distinction because "one who employs an independent contractor is not liable

for physical harm caused by a negligent act or omission of the contractor."  See Phillips v.

---

[10]  This doctrine is also sometimes referred to as "respondeat superior liability."  See Marshall v.
Se. Pennsylvania Transp. Auth., 587 F. Supp. 258, 262 (E.D. Pa. 1984) (denoting the exceptions
to the general rule precluding the imposition of vicarious liability for the acts of independent
contractors).

Washington County Transp. Auth., 986 A.2d 925, 934 (Pa. Commw. Ct. 2009) (citation

omitted).  There is, however, a well-defined exception to this rule.  The Supreme Court of

Pennsylvania held that:

> [o]ne who employs an independent contractor to do work involving a special danger
> to others which the employer knows or has reason to know to be inherent in or
> normal to the work, or which he contemplates or has reason to contemplate when
> making the contract, is subject to liability for physical harm caused to such others
> by the contractor's failure to take reasonable precautions against such danger.

See Philadelphia Elec. Co. v. James Julian, Inc., 228 A.2d 669, 670 (Pa. 1967).

The Pixelle Defendants argue that they were "mere customers of their co-defendants

pursuant to a purchase order," which should vitiate their liability for Defendant Mawyer's

conduct.  (Doc. No. 91 at 8.)[11]  The Pixelle Defendants maintain that vicarious liability does not

attach because Defendant Mawyer was never one of their employees or agents, and, at the time

of the accident, operated a vehicle in which the Pixelle Defendants lacked any ownership

interest.  (Id. at 8–9.)  Additionally, the Pixelle Defendants argue that, when the Tapscott

Defendants and Defendants Mawyer and Richards admitted that Mawyer was "the agent and

employee of [Defendant] Richards" in their answers, this constitutes a judicial admission

"removing the issue of agency as a factual dispute going forward."  (Id. at 9.)[12]

---

[11]  In determining whether the Court can consider this argument, based on a document extrinsic
to the FAC, the Court is guided by the United States Court of Appeals for the Third Circuit's
instruction that "a court may consider an undisputedly authentic document that a defendant
attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."
See Pension Benefit Guar. Corp., 998 F.2d at 1196.  The purchase order was attached to the
Pixelle Defendants' motion to dismiss, see (Doc. No. 90-7) and referenced in the FAC (Doc. No.
85 at 5).  Accordingly, the Court finds that it can consider this document in evaluating the Pixelle
Defendants' motion.

[12]  The Pixelle Defendants' argument on this point requires the Court to consider the Pixelle
Defendants motion as one seeking judgment on the pleadings pursuant to Federal Rule of Civil
Procedure 12(c), despite styling their motion as a motion to dismiss pursuant to Federal Rule of
Civil Procedure 12(b)(6).  Relevant here, "[t]he standard used in analyzing a motion for

In opposing the Pixelle Defendants' motion to dismiss, Plaintiffs assert several arguments. Plaintiffs maintain that Defendant Mawyer was an agent of the Pixelle Defendants, thus subjecting them to vicarious liability for Defendant Mawyer's actions. (Doc. No. 105 at 18.) Plaintiffs argue that:

> [Defendant] Mawyer and [the other] Defendants should have known that failing to stop at a red traffic signal, that driving an overweight tractor trailer through a crowded area where there are businesses, homes, and people, that driving with improperly maintained brakes and braking system, that driving while fatigued and distracted, that driving too fast for conditions, that driving in excess of the allowed hours of service regulations, and that driving while using a cellular phone without a Bluetooth or hands-free device would result in serious injury to others, such as Plaintiffs' Decedent, driving on the roadway.

(Id. at 19–20.)

Further, Plaintiffs maintain that Defendant Mawyer's admission that he was employed by Defendant Richards does not foreclose the imposition of vicarious liability against the Pixelle Defendants. (Id. at 28.) Plaintiffs argue that discovery could permit a finding that Defendant Mawyer was also an agent of the Pixelle Defendants, which would render them vicariously liable for his conduct. (Id. at 30.) Plaintiffs further assert that, if the admission of Defendant Mawyer is binding, then it would only be binding against the party making the admission. (Id. at 31.) In this case, that would make the admission binding only against Defendants Mawyer and Richards and the Tapscott Defendants.

---

judgment on the pleadings is identical to the standard applicable to a motion to dismiss under Rule 12(b)(6)," see Mikola v. Penn Lyon Homes, Inc., No. 07-cv-00612, 2008 WL 2357688, at *1 (M.D. Pa. June 4, 2008), and "[t]he only notable difference between these two standards is that the court in a motion on the pleadings reviews not only the complaint but also the answer and written instruments attached to the pleadings." See Sprague v. Neil, No. 5-cv-01605, 2007 WL 3085604, at *2 (M.D. Pa. Oct. 19, 2007).

Defendant SVF argues that the admissions of Defendants Mawyer and Richards, wherein they state that Defendant Mawyer was an agent and employee of Defendant Richards, "remov[es] the issue of agency as a factual dispute moving forward." (Doc. No. 89 at 4.)[13]  It follows, according to Defendant SVF, that since Defendant Mawyer was an employee and agent of Defendant Richards (and his company) at the time of the crash, then he could not be an agent or employee of Defendant SVF, thus vitiating its vicarious liability for his actions. (Id. at 5.) Defendant SVF next cites the Owner Operator Lease Agreement entered by Defendant Richards and Defendant SVF, which was operable at the time of the accident, maintaining that the Owner Operator Lease Agreement clearly delineates that operators of the tractor trailers are under the employ of Defendant Richards. (Id. at 5–6.)[14]  Defendant SVF argues that the language of this

---

[13]  Defendant SVF's argument on this point, like the Pixelle Defendants' argument discussed supra, requires the Court to consider Defendant SVF's motion as one seeking judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), despite styling its motion as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  As noted supra, "[t]he standard used in analyzing a motion for judgment on the pleadings is identical to the standard applicable to a motion to dismiss under Rule 12(b)(6)," see Mikola, 2008 WL 2357688, at *1, and "[t]he only notable difference between these two standards is that the court in a motion on the pleadings reviews not only the complaint but also the answer and written instruments attached to the pleadings."  See Sprague, 2007 WL 3085604, at *2.

[14]  As discussed supra, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  See Pension Benefit Guar. Corp., 998 F.2d at 1196.  Defendant SVF asserts that the "Owner Operator Lease Agreement" is "attached hereto and incorporated herewith as Exhibit 'B'" (Doc. No. 89 at 5).  However, no such attachment is included in the record before the Court. Defendant SVF also notes that paragraph twenty-nine (29) of the FAC explicitly relies on the contract between Defendant SVF and Defendant Richards. (Id.)  Since "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment," see U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002), the Court can consider this document in evaluating Defendant SVF's motion to dismiss Plaintiffs' FAC.

agreement precludes a finding that Defendant Mawyer was an agent or employee of Defendant SVF at the time of the crash.  (Id.)

Defendant SVF next argues that Plaintiffs' FAC, which states that Defendant SVF's "agents and/or employees, including but not limited to Defendant Mawyer" were liable for Defendant Mawyer's reckless acts, is unduly vague and does not specifically identify who Plaintiffs are referring to besides Defendant Mawyer.  (Id. at 6.)  Additionally, Defendant SVF argues that the Owner Operator Lease Agreement explicitly states that Defendant Richards was to be an independent contractor of Defendant SVF.  (Id. at 7.)  Defendant SVF argues that, in accordance with how Pennsylvania courts generally handle this issue, the employer of an independent contractor is not liable for the independent contractor's negligent or wrongful acts. (Id. at 8.)  Defendant SVF acknowledges that there is an exception to this general rule—when the independent contractor's work involves a special danger or peculiar risk, then liability can be imputed to the employer.  (Id.)  However, Defendant SVF maintains that there is no authority supporting the proposition that "the transportation of timber is a peculiar risk for an interstate transport company."  (Id.)  It follows, according to Defendant SVF, that if Defendant Richards and through him Defendant Mawyer are independent contractors, then because the transportation of timber creates no peculiar risk or special danger, vicarious liability cannot be imputed to Defendant SVF.  (Id.)

In opposing Defendant SVF's motion to dismiss, Plaintiffs assert several arguments. First, Plaintiffs maintain that they sufficiently pleaded that Defendant SVF is both vicariously liable for the actions of Defendants Mawyer and Richards, as well as "negligent in its own right." (Doc. No. 106 at 17.)  Plaintiffs reiterate that Pennsylvania law is clear on the issue of employer liability for employee actions: "if a Defendant is the employer of an employee who acted in

reckless disregard to the rights of others, the employer may be held liable vicariously for any punitive damages found against the employee." (Id. at 18.)  Plaintiffs maintain that Defendant SVF can be held vicariously liable, should discovery produce evidence indicating that Defendant Mawyer was one of its agents. (Id. at 19.)  Plaintiffs maintain that the admission of Defendants Maywer, Richards, and the Tapscott Defendants, that Defendant Mawyer was an employee of Defendant Richards, is a judicial admission only binding against those parties. (Id. at 20.)

Plaintiffs next argue that the Owner Operator Lease Agreement between Defendant SVF and Defendant Richards "is not determinative of whether Defendant Mawyer was acting as the agent of more than one of the Defendants." (Id. at 22.)  Additionally, Plaintiffs maintain that, even if the Owner Operator Lease Agreement delineates that Defendant Richards was to be an independent contractor employed by Defendant SVF, the above-captioned action exemplifies an exception to the general rule that an employer cannot be liable for the acts of an independent contractor. (Id. at 24.)  In support of that argument, Plaintiffs cite § 429 of the Restatement (Second) of Torts, which specifies that an employer who employs an independent contractor to perform services for another entity may be held liable for the negligent acts of said independent contractor. (Id. (citing Restatement (Second) of Torts § 429 (1965)).)  Plaintiffs then reiterate that they are "entitled to discovery regarding the precise nature of the relationship between [Defendant] SVF and [Defendant] Richards." (Id. at 27.)  Plaintiffs further argue that this Court should find that Defendant SVF has a duty to investigate who it hires to carry goods on its behalf. (Id. at 28.)  On this point, Plaintiffs maintain that the extent of control exercised by Defendant SVF over Defendants Mawyer and Richards is a fact question for a jury to decide. (Id. at 29.)

To plausibly state a claim imputing liability for the allegedly tortious acts and omissions of Defendants Mawyer, Richards and the Tapscott Defendants to the moving Defendants, Plaintiffs must plead the existence of an agency relationship wherein Defendant Mawyer is the agent of each of the moving Defendants, who each simultaneously serve as principals.  More specifically, Plaintiffs must plead facts sufficient to show a "manifestation by the principal[s] that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal[s] [are] to be in control of the undertaking."  See McIlwain, 208 A.3d at 485.  Such facts must effectively set out a master-servant, not independent contractor relationship, to impute liability from the agent to the principal, because:

> [a] master is a species of principal, and a servant is a species of agent.  A master is a principal who employs an agent to perform service in his affairs and who controls or has the right to control the Physical conduct of the other in the performance of the service. A servant is an agent employed by a master to perform service in his affairs whose Physical conduct in the performance of the service is controlled or is subject to the right to control by the master.

See Smalich v. Westfall, 269 A.2d 476, 481 (Pa. 1970) (citations omitted).  "If a particular agent is not a servant, the principal is not considered a master who may be held vicariously liable for the negligent acts of the agent."  Juarbe, 431 A.2d at 1076.  After review of the pleadings and relevant authority, the Court finds that Plaintiffs' FAC fails to plead ample facts supporting their claim of vicarious liability.

Plaintiffs' FAC asserts identical claims against each of the moving Defendants.  The FAC states that the accident giving rise to the death of Plaintiffs' Decedent:

> was due to the negligent conduct, careless conduct and gross, wanton and reckless conduct of Defendant Shenandoah Valley Farms, LLC, and/or its agents, ostensible agents, servants, workmen, and/or employees, and in no way due to the negligent act or failure to act on the part of Plaintiffs' Decedent;

> was due to the negligent conduct, careless conduct and gross, wanton and reckless conduct of Defendant Pixelle Specialty Solutions, LLC, and/or its agents,

18

ostensible agents, servants, workmen, and/or employees, and in no way due to the negligent act or failure to act on the part of Plaintiffs' Decedent;

was due to the negligent conduct, careless conduct and gross, wanton and reckless conduct of Defendant Pixelle Specialty Solutions Holding, LLC, and/or its agents, ostensible agents, servants, workmen, and/or employees, and in no way due to the negligent act or failure to act on the part of Plaintiffs' Decedent.

(Doc. No. 85 ¶¶ 84, 104, 114.)  In each count, Plaintiffs' FAC went on to list dozens of purported statutory violations committed by Defendant Mawyer as he operated the tractor trailer, citing each of the moving Defendants as being responsible for those acts.  (Id. at ¶¶ 87a–ii, 88a–jj, 107a–ii, 108a–qq, 117a–ii, 118a–jj.)[15]  In considering the foregoing, the Court finds that

---

[15]  By way of example, Plaintiffs' FAC asserts that:

[t]he negligent conduct, careless conduct, and gross, wanton and reckless conduct of Defendant Pixelle Specialty Solutions, LLC by and through the acts and or omissions of its agents and/or employees, including but not limited to Defendant Mawyer, consisted of the following:

a.    Homicide by Vehicle in violation of 75 Pa. C.S.A. § 3732(a);

b.    Failure to stop at a red traffic signal in violation of 75 Pa. C.S.A. §3112(a)(3);

c.    Failure to obey a traffic control device in violation of 75 Pa. C.S.A. §3111(a);

d.    Exceeded Registered Gross Weight in violation of 75 Pa. C.S.A. § 4942(c);

e.    Operating his vehicle in excess of the maximum gross weight in violation of 75 Pa. C.S.A. § 4941;

f.    Driving an unregistered vehicle in violation of 75 Pa. C.S.A. § 1301(a);

g.    Operating a vehicle which was not equipped as required, while he was in violation of department regulations, and operating the vehicle or combination in an unsafe condition in violation of 75 Pa C.S.A. § 4107(b)(2).

(Doc. No. 85 at 71.)  The FAC features similar pleadings for the other moving Defendants.  See (id. at 42–43; 87.)  Plaintiffs simply assume vicarious liability and

Plaintiffs' pleading of vicarious liability fails to include facts sufficient to satisfy <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), and <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).  Plaintiffs' FAC simply assumes vicarious liability and then imputes all of Defendant Mawyer's acts to the moving Defendants on the basis that they "should have known" that Defendant Mawyer's actions on the day of the accident "would result in serious injury to others."  (Doc. Nos. 105 at 19–20 (quoting Plaintiffs' FAC); 106 at 34–35.)  Nowhere in Plaintiffs' FAC, namely in the counts alleged against the moving Defendants, do Plaintiffs suggest that any of the moving Defendants manifested assent that Defendants Mawyer and Richards would act on their behalf, that Defendants Mawyer and Richards accepted said manifestation, nor that the parties came to any sort of agreement indicating that the moving Defendants would control the way Defendants Mawyer and Richards transported the timber.  <u>See McIlwain</u>, 208 A.3d at 485.[16]  To the contrary, the FAC delineates that "Defendant Richards, Tapscott Brothers, Shenandoah Valley Farms, LLC, and [the] Pixelle [Defendants] controlled Defendant Mawyer and the tractor and trailer that he was driving."  (Doc. No. 85 at 8.)[17]  This is not a well-plead fact but rather a

---

impute every purported statutory violation to each of the moving Defendants, without providing any basis for why each respective Defendant should be liable for said conduct.

[16]  While Plaintiffs did not explicitly make the argument, the Court is compelled to consider that in the Owner Operator Lease Agreement, Defendant SVF did enter into an agreement with Defendant Richards, wherein Defendant Richards would serve as an independent contractor on Defendant SVF's behalf in transporting the timber.  (Doc. No. 77-2.)  However, the Owner Operator Lease Agreement and FAC are devoid of facts suggesting that Defendant SVF retained even a modicum of control over how Defendant Richards and his employees transported the timber.

[17]  This paragraph of the FAC is telling with regard to the vicarious liability analysis.  Instead of pleading facts sufficient to support any claim of vicarious liability, Plaintiffs simply assert that five different Defendants controlled Defendant Mawyer as he undertook his duties.  (Doc. No. 85 ¶ 39.)  Accordingly, the Court fails to see how this supports the idea that each of the moving Defendants exercised the requisite control over Defendant Mawyer to subject them to vicarious liability.  To the contrary, this also seems to be a recitation of an element necessary to establish vicarious liability, without any factual basis.  In heeding the United States Supreme Court's

conclusory legal assertion "not entitled to the assumption of truth," <u>see</u> <u>Santiago</u>, 629 F.3d at

130, when reviewing the moving Defendants motions to dismiss.  <u>See</u> <u>Papasan v. Allain</u>, 478

U.S. 265, 286 (1986) (holding that courts "must take all the factual allegations in the complaint

as true, [but] are not bound to accept as true a legal conclusion couched as a factual allegation").

Accordingly, the Court is unpersuaded that Plaintiffs met their burden to allege facts in support

of a principal-agent, more specifically a master-servant relationship, between any of the moving

Defendants and Defendants Mawyer, Richards and the Tapscott Defendants.

 Additionally, as discussed <u>supra</u>, when a master-servant relationship in the context of

agency cannot be established, it is often the case that an independent contractee-contractor

relationship exists.  <u>See</u> <u>Juarbe</u>, 431 A.2d at 1075–76.  As also discussed <u>supra</u>, "[a] principal

generally will not be held liable for the torts of his agent who is an independent contractor, not a

servant"  <u>see</u> <u>Kemether v. Pennsylvania Interscholastic Athletic Ass'n, Inc.</u>, 15 F. Supp. 2d 740,

748 (E.D. Pa. 1998), subject to the limited exception that a contractor "is often subject to liability

for the unauthorized conduct of an agent with respect to matters which, under the agreement

creating the relation, he has the right to direct . . . ."  <u>See</u> <u>id.</u> at 749 (citing Restatement (Second)

---

instruction that  "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not
need detailed factual allegations, a plaintiff's obligation to provide the grounds of his
entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do," <u>see</u> <u>Twombly</u>, 550 U.S. at 555, the Court finds
Plaintiffs' FAC unavailing as to the establishment of the principal-agent relationship, and more
specifically, the master-servant relationship necessary to impute vicarious liability to any of the
moving Defendants.  Additionally, while it is possible for an agent to have multiple principals, it
follows that "both masters become jointly and severally liable for the torts of the common agent,
notwithstanding that in a showdown only one of the two masters would have real control."  <u>See</u>
<u>Tonsic v. Wagner</u>, 289 A.2d 138, 142–43 (Pa. Super. Ct. 1972) (Hoffman, J., dissenting) <u>rev'd,</u>
458 Pa. 246, 329 A.2d 497 (1974).  In other words, it is illogical to assume that any agent could
be in a master-servant relationship with several principals, because it would be extremely
difficult for several entities to each respectively control the agent's performance.  In asserting
vicarious liability, Plaintiffs' FAC essentially names five principals who all purportedly direct
the performance of Defendant Mawyer, without providing any factual basis for the assertion.

of Agency § 216 (1958)).[18]  After reviewing the FAC and the parties' arguments, the Court

cannot find that Plaintiffs plausibly pleaded facts to support an allegation that moving

Defendants maintained the requisite control over Defendants Mawyer or Richards.  Similar to the

foregoing discussion of the master-servant analysis, Plaintiffs FAC contains only conclusory

assertions that the moving Defendants controlled Defendant Mawyer, with no well pleaded facts

in support of this allegation.  See (Doc. No. 85 ¶ 39).

Plaintiffs fare no better with the broader exception to the general rule against the

imposition of principal liability for the acts of independent contractors.  As discussed supra:

> [o]ne who employs an independent contractor to do work involving a special danger
> to others which the employer knows or has reason to know to be inherent in or
> normal to the work, or which he contemplates or has reason to contemplate when
> making the contract, is subject to liability for physical harm caused to such others
> by the contractor's failure to take reasonable precautions against such danger.

See Philadelphia Elec. Co., 228 A.2d at 670.  Plaintiffs cite no authority for the proposition that

driving a tractor trailer loaded with cargo poses a sort of special danger.  Cf. Farabaugh v.

Pennsylvania Tpk. Comm'n, 911 A.2d 1264, 1277 (Pa. 2006) (holding that "the task of driving

an off-highway dump truck on a highway construction site" does not involve a special danger

sufficient to impute vicarious liability to the entity employing an independent contractor).[19]

---

[18]  Specifically, as it pertains to Defendant SVF, the Court finds that the Owner Operator Lease
Agreement clearly states that "the Owner Operator (Defendant Richards) is to be an independent
contractor" for Defendant SVF and "shall employ all persons operating trucks hereunder . . . ."
(Doc. No. 77-2 at 1–2.)

[19]  Pennsylvania courts have specified that a special danger or risk is prevalent when:

> (1)     the risk is foreseeable to the employer of the independent contractor at the
>         time the contract is executed, i.e., a reasonable person, in the position of
>         the employer, would foresee the risk and recognize the need to take
>         special measures; and
>
> (2)     the risk is different from the usual and ordinary risk associated with the
>         general type of work done, i.e., the specific project or task chosen by the

Accordingly, Plaintiffs' argument for imputing vicarious liability to the moving Defendants is insufficient under this exception to the general rule regarding independent contractors.

For the reasons discussed herein, the Court finds Plaintiffs' vicarious liability argument unavailing.[20]  The Court next examines whether Plaintiffs plausibly pleaded that a joint venture between the moving and non-moving Defendants existed such that liability could be imputed to the moving Defendants for the allegedly tortious acts of their co-venturers.

### C.      Existence of a Joint Venture

Under Pennsylvania law, four elements must be present to establish a joint venture:

(1) each party to the venture must make a contribution, not necessarily of capital, but by way of services, skill, knowledge, materials or money; (2) profits must be shared among the parties; (3) there must be a joint proprietary interest and right of mutual control over the subject matter of the enterprise; (4) usually, there is a single business transaction rather than a general and continuous transaction.

See McRoberts v. Phelps, 138 A.2d 439, 443–44 (1958) (cleaned up).  Additionally,

[a] joint venture is not a status created or imposed by law; it is a relationship voluntarily assumed and arising wholly from contract.  Whether persons have engaged in it must depend primarily upon their intention as expressed in their agreement and the construction they have placed upon it.

---

employer involves circumstances that are substantially out-of-the-ordinary.

See Ortiz v. Ra-El Dev. Corp., 528 A.2d 1355, 1358 (Pa. Super. Ct. 1987).  Plaintiffs have offered no factual assertions that either of these factors militate in favor of finding that Defendants Mawyer and Richards were engaged in an activity with a special danger or risk, thus allowing for the imposition of independent contractor vicarious liability.

[20]  The moving Defendants each dedicate several pages of briefing to the issue of punitive damages for vicarious liability claims.  (Doc. Nos. 89 at 11–12; 91 at 5–8.)  However, because the Court finds that Plaintiffs fail to sufficiently plead facts to state a claim for imposing vicarious liability for Defendants Mawyer and Richards and the Tapscott Defendants' purported negligence, the Court sees no need to examine the availability of a remedy for Plaintiffs' vicarious liability claims.

See <u>Snellbaker v. Herrmann</u>, 462 A.2d 713, 716 (Pa. Super. Ct. 1983) (citation omitted).  A joint venture need not be expressly created and it "may be implied from the acts and conduct of the parties."  <u>See</u> <u>Phelps</u>, 138 A.2d at 443.  Additionally, "[e]ach joint venturer is both an agent and a principal of the joint venture."  <u>See</u> <u>Gold & Co. v. Ne. Theater Corp.</u>, 421 A.2d 1151, 1153 n.1 (Pa. Super. Ct. 1980).

Accordingly, because each joint venturer is an "agent and a principal of the joint venture" <u>see</u> <u>id.</u>, and "a principal is liable to third parties for the frauds, deceits, concealments, misrepresentations, torts, negligent acts and other malfeasances of his agent," <u>see</u> <u>McLaughlin</u>, 298 A.3d at 396, it follows that, upon establishing the existence of a joint venture, liability can be imputed for the acts of one joint venturer to the other joint venturers even if the co-venturer "did not authorize, justify, participate in or know of such conduct or even if he forbade the acts or disapproved of them, as long as they occurred within the agent's scope of employment."  <u>See</u> <u>id.</u>

Defendant SVF maintains that Plaintiffs have failed to adequately plead facts reflecting the existence of a joint venture.  (Doc. No. 89 at 9.)  First, Defendant SVF argues that Plaintiffs fail to cite to "any oral or written agreement between, or representations by [it], the Tapscott Defendants, [Defendant] Richards, and [the] Pixelle [Defendants], expressing an intention to create a joint venture."  (<u>Id.</u> at 9.)  Additionally, Defendant SVF maintains that Plaintiffs' FAC is "unduly vague and specifically fails to plead specifically what services, skills, knowledge, materials, or money" it contributed to the joint venture.  (<u>Id.</u>)  Furthermore, Defendant SVF argues that the FAC fails to allege any factual basis for the conclusion that it exercised any control over the "alleged joint venture."  (<u>Id.</u>)  Defendant SVF concedes that joint ventures are

amorphous but maintains that Plaintiffs' pleadings allege insufficient facts to even faintly

suggest that Defendant SVF intended to enter into a joint venture with the other defendants.  (Id.)

In response, Plaintiffs argue that they have pleaded sufficient facts showing the intent by

Defendant SVF to enter a joint venture with the other defendants.  (Doc. No. 106 at 29.)

Plaintiffs maintain that:

> there were express contracts between the Defendants, namely, the Pixelle and
> Tapscott Purchase Order and the Owner Operator Lease Agreement between SVF
> and Richards and his company, regarding the joint enterprise that is alleged to have
> existed between Defendants.  It is not alleged that there was an express contract or
> specific agreement between SVF, Tapscott, Richards and Pixelle to create a joint
> venture, rather it is alleged that an agreement can be implied from the stated
> contracts and from the acts and conduct of the parties which is sufficient at this
> stage to plausibly claim an agreement existed with the Defendants that constituted
> a joint venture.

(Id. at 31.)  Plaintiffs argue that: (1) Defendants, including Defendant SVF, would share in

profits generated by the Owner Operator Lease Agreement and timber shipping agreement more

broadly; (2) Defendants, including Defendant SVF, contracted with Defendant Richards and his

company and thus shared some control in implementing the agreement; and (3) Defendants'

agreement constitutes a single business transaction, which supports Plaintiffs' argument that

there was an implied joint venture between the moving Defendants, namely Defendant SVF, and

the other defendants.  (Id. at 32.)

If the Court finds that Plaintiffs' FAC alleges sufficient facts showing that the moving

Defendants entered a joint venture with the other defendants, namely Defendants Mawyer,

Richards and the Tapscott Defendants, it follows that the moving Defendants could be liable for

the acts or omissions of Defendants Mawyer, Richards and the Tapscott Defendants for their

purported role in the accident that killed Plaintiffs' Decedent.  See Ciotola v. Star Transportation

& Trucking, LLC, 481 F. Supp. 3d 375, 387 (M.D. Pa. 2020) (applying Pennsylvania law and

stating that "[o]nce a party satisfies the test for a joint venture, the torts committed by one joint adventurer may be imputed upon other joint adventurers") (citing <u>Beavers v. W. Penn Power Co.</u>, 436 F.2d 869, 873 (3d Cir. 1971)).  However, upon review of Plaintiffs' FAC, the parties' briefs, the appropriately attached exhibits, and relevant authority, the Court concludes that Plaintiffs fail to sufficiently plead the existence of a joint venture between the moving Defendants and the other defendants in the above captioned action.

As to the first element of a joint venture—requiring the contribution of capital, services, skill, knowledge, materials, or money—Plaintiffs' FAC simply states "[u]pon information and belief . . ." the moving Defendants, along with Defendant Richards and the Tapscott Defendants, "each contributed capital, services, skill, knowledge, materials, vehicles, and/or money in furtherance of a joint venture."  (Doc. No. 85 ¶ 30.)  As an initial matter, the Court observes that:

> pleading upon information and belief is permissible [w]here it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control—so long as there are no boilerplate and conclusory allegations and [p]laintiffs . . . accompany their legal theory with factual allegations that make their theoretically viable claim plausible.

<u>See</u> <u>McDermott v. Clondalkin Grp., Inc.</u>, 649 F. App'x 263, 267–68 (3d Cir. 2016) (unpublished) (citation omitted);[21] <u>see also</u> <u>Brit. Telecommunications PLC v. IAC/InterActiveCorp</u>, 381 F. Supp.3d 293 (D. Del. 2019), <u>aff'd</u>, 813 F. App'x 584 (Fed. Cir. 2020) (applying the same standard).  Here, Plaintiffs have not alleged that the "requisite factual information" evincing an intent to create a joint venture is exclusively under the control of the moving Defendants.  <u>See</u>

---

[21]  The Third Circuit has acknowledged that its unpublished opinions may nonetheless contain persuasive reasoning.  <u>See</u> <u>New Jersey, Dep't of Treasury, Div. of Inv. v. Fuld</u>, 604 F.3d 816, 823 (3d Cir. 2010) (noting that an unpublished opinion is "as persuasive as its reasoning"); <u>see also</u> <u>Drinker v. Colonial Sch. Dist.</u>, 78 F.3d 859, 864 n.12 (3d Cir. 1996) (following an unpublished opinion based on "factual similarity" and "look[ing] to the [unpublished opinion] as a paradigm of the legal analysis").

McDermott, 649 F. App'x at 267–68.  Instead, Plaintiffs argue that they are "entitled to discovery regarding the nature of the Defendants' relationship."  (Doc. Nos. 105 at 35; 106 at 31.)  Even if the Court construes this statement as alleging that the moving Defendants maintain exclusive control over information that would establish a joint venture, Plaintiffs' FAC still contains only conclusory and boilerplate allegations, which are insufficient to plausibly allege that the moving Defendants intended to enter into a joint venture with Defendants Mawyer and Richards and the Tapscott Defendants.  Plaintiffs fail to "accompany their legal theory with factual allegations that make their theoretically viable claim plausible."  See McDermott, 649 F. App'x at 267–68.  To the contrary, Plaintiffs merely restate the first element of a joint venture and allege that it can be satisfied purely upon "information and belief."  (Doc. No. 85 ¶ 30.)  While the United States Supreme Court was clear that a plaintiff need not plead specific facts to plausibly state a claim for relief, see Iqbal, 556 U.S. at 679, a plaintiff must do something more than quote the language of the required element without offering any further factual predicates in support of its position.  See Twombly, 550 U.S. at 555 (specifying that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (cleaned up).  It is unclear from Plaintiffs' FAC why they believe that any of the moving Defendants contributed anything in furtherance of a joint venture, nor what they believe any of the moving Defendants actually contributed.  For that reason, the Court finds that Plaintiffs fail to plausibly plead the first element of a joint venture between the moving Defendants and the other defendants in the instant action.

Assuming arguendo that Plaintiffs plausibly pleaded facts satisfying the first element of a joint venture, the Court finds that Plaintiffs allegations are insufficient to plead the second element of a joint venture.  As was noted above, the second element of a joint venture requires "profits [to] be shared among the parties."  See Phelps, 138 A.2d at 443.  As an initial matter, the word "profits" does not appear in Plaintiffs' FAC, nor do Plaintiffs state any facts supporting the existence of a profit sharing agreement.  However, in opposing the moving Defendants' motions to dismiss, Plaintiffs maintain that they have:

> sufficiently alleged, at the motion to dismiss stage, that the Defendants would share in profits generated by the transportation of the timber from Tapscott to Pixelle which was required by the contract between these two Defendants, and by the Owner Operator Lease Agreement between SVF and Richards and his company.

(Doc. No. 105 at 36.)  Plaintiffs' argument in opposing the motions to dismiss and supporting the existence of a profit sharing agreement primarily focuses on the content of two documents: (1) the Owner Operator Lease Agreement between Defendant SVF and Defendant Richards; and (2) the purchase order between the Tapscott Defendants and the Pixelle Defendants.  As discussed supra, because the Owner Operator Lease Agreement is "integral to or explicitly relied upon in the complaint," see Higgins, 281 F.3d at 388, while the purchase order is attached to the Pixelle Defendants motion to dismiss, both documents can be considered in evaluating the pending motions to dismiss.  See Pension Benefit Guar. Corp., 998 F.2d at 1196.  The Court examines each document in turn.

With regard to the Owner Operator Lease Agreement between Defendant SVF and Defendant Richards, there is no language about profit sharing anywhere in the document.  See (Doc. No. 77-2).  To the contrary, the final page of the agreement contains a subsection on "Compensation, Commodities, [and] Territory."  See (id. at 4).  In that subsection, the agreement clearly states that the Carrier, Defendant SVF, "agrees to pay Owner Operator  [Defendant

28

Richards] as full compensation for services to be performed by the Carrier under said rules and regulations the rates and charges set forth in the rate schedule . . . ."  (Id.)  Nothing in the agreement indicates that Defendant SVF would share in the profits of the timber delivery transaction with Defendant Richards; rather, Defendant Richards would receive compensation for his delivery services.  Courts have long held that compensation for services, where parties do not share in the profits or become liable for the losses of other parties, does not constitute profit sharing for the purposes of establishing an implied joint venture.  See Wilkoski v. B&T Express, Inc., No. 18-cv-01359, 2022 WL 847068, at *21 (W.D. Pa. Mar. 22, 2022) (citing cases which discuss how "a contract for steel shipments at predetermined rates is not profit sharing for purposes of establishing a joint venture" and specifying that without the sharing of losses, parties cannot be said to enter into a profit sharing agreement); see also SDK Invs., Inc. v. Ott, No. 94-cv-01111, 1996 WL 69402, at *6 (E.D. Pa. Feb. 15, 1996) (specifying that "the parties must mutually agree to each make a contribution to a business transaction, to share the profits and losses of that transaction").  Accordingly, the Court is unpersuaded that the Owner Operator Lease Agreement supports the existence of any profit sharing agreement between Defendant SVF and Defendant Richards.

As it pertains to the purchase order between the Tapscott Defendants and Pixelle Defendants, the Court is similarly unpersuaded by Plaintiffs' argument that the exhibit supports the existence of a profit sharing agreement between the parties.  In the purchase order, it clearly delineates that the Pixelle Defendants are to pay the Tapscott Defendants weekly, by check, "based on inspection and approval by Pixelle of delivered commodities."  (Doc. No. 90-7 at 2.)  As is the case with the Owner Operator Lease Agreement, discussed supra, there is nothing in the text of the purchase order indicating profit sharing, loss sharing, or that the purchase order was

anything besides a document memorializing that the Pixelle Defendants would pay for the commodities delivered and the Tapscott Defendants would be paid the quoted price for those commodities.  With regard to the purchase order, the Court finds Plaintiffs' argument unavailing.  Plaintiffs have failed to plausibly allege the second element of a joint venture—profit and loss sharing—and the Court is unpersuaded by Plaintiffs' argument to the contrary.

However, assuming arguendo that Plaintiffs plausibly pleaded facts supporting the first two elements of a joint venture, the Court next examines if Plaintiffs have plausibly stated facts supporting the third element of a joint venture, indicating a "joint proprietary interest and right of mutual control over the subject matter of the enterprise."  See Phelps, 138 A.2d at 443–44.  In their FAC, Plaintiffs allege that "[u]pon information and belief, Defendant Richards, [the] Tapscott [Defendants], Defendant Shenandoah Valley Farms, LLC, and Defendant Pixelle shared control and management of the enterprise, including the property used in the joint venture."  (Doc. No. 85 ¶ 31.)  Here, similar to Plaintiffs' pleading with regard to the first element, there is merely a recitation of the text of the third element of a joint venture.  Plaintiffs' FAC does not discuss any "factual allegations that make their theoretically viable claim plausible."  See McDermott, 649 F. App'x at 268.  When Plaintiffs discuss "property used in the joint venture," they do not make clear if they are referring to the tractor trailer, the machinery used to load the tractor trailer with timber, the timber itself, or more than one of these items.  As noted supra, despite the United States Supreme Court's holding that a plaintiff need not plead "specific facts" to plausibly state a claim for relief, see Iqbal, 556 U.S. at 679, a plaintiff must do more than quote the language of the required element in order to plausibly state a claim upon which relief can be granted.  See Twombly, 550 U.S. at 555.  The Court finds that Plaintiffs' FAC as to this element amounts to "conclusory allegations . . . not entitled to the assumption of

truth," and fails to assert "any well-pleaded factual allegations" which "plausibly give rise to an entitlement to relief."  See Santiago, 629 F.3d at 130 (citation omitted).

Because the Court finds that Plaintiffs have failed to plead the first three elements of a joint venture, the Court finds that the question—asking if Plaintiffs pleaded sufficient facts supporting the existence of a joint venture between the moving Defendants and Defendants Mawyer, Richards, and the Tapscott Defendants—to be answered in the negative.

The Court observes that the arguments raised by the moving Defendants in the pending motions to dismiss were raised by the moving Defendants in response to Plaintiffs' TAC.  See (Doc. Nos. 67, 68).  The Court did not rule on the moving Defendants' motions to dismiss Plaintiffs' TAC pursuant to Federal Rule of Civil Procedure 12(b)(6), instead holding that Plaintiffs' TAC should be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 8(a)(2), for failure to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  See Fed. R. Civ. P. 8(a)(2); see also (Doc. Nos. 83, 84).  That said, Plaintiffs' FAC is neither "short" nor "plain," nor does it contain any additional factual allegations showing an entitlement to relief.  Accordingly, the Court finds that Plaintiffs' FAC fails to plead sufficient facts supporting any theory of liability against the moving Defendants and will grant the moving Defendants' motions to dismiss the claims against them in Plaintiffs' FAC with prejudice.  See Carroll v. E One Inc, 893 F.3d 139, 146 (3d Cir. 2018) (discussing how the "general rule acknowledges that, in the ordinary case, dismissal with prejudice protects a defendant from otherwise repetitive litigation, whereas dismissal without prejudice leaves a defendant at risk of re-litigating dismissed issues").

**D.      Arguments Related to Defendant SVF's Motion to Strike the Crossclaims by Defendants Mawyer, Richards, and the Tapscott Defendants**

The Cross Claimants assert crossclaims against Defendant SVF, "incorporating by reference the factual allegations set forth in Plaintiffs' [FAC]."  (Doc. No. 101 at 2.)  The Cross Claimants argue that "[i]f the allegations contained in Plaintiffs' [FAC] are established," then Defendant SVF caused the injuries and damages to Plaintiffs' Decedent.  (Doc. No. 86 at 18.)

In arguing to strike the crossclaims, Defendant SVF maintains that the Cross Claimants "do not specify which of the dozens of factual allegations in Plaintiffs' [FAC] are incorporated into Defendants'" crossclaims against it.  (Doc. No. 101 at 5.)  Further, Defendant SVF incorporates and adopts by reference the arguments it promulgated in support of its motion to dismiss Plaintiffs' FAC.  (Id.)  Defendant SVF maintains that the Court should dismiss Plaintiffs' FAC, and accordingly the Court should dismiss these crossclaims, strike them, or instruct defendants to file more definitive crossclaims against it.  See (id.).

In response, Defendants Mawyer, Richards, and the Tapscott Defendants argue that the crossclaims filed against Defendant SVF are sufficiently specific and should not be stricken from the record.  (Doc. No. 104 at 1.)  The Cross Claimants further maintain that:

> [i]n ruling upon Shenandoah's various Rule 12 motions, the Court will determine whether various allegations made by Plaintiffs against Shenandoah will longer be part of Responding Defendants' cross-claims.  Ultimately, in responding to Responding Defendants' cross-claims, Shenandoah does not have to respond to each and every allegation that Plaintiffs have asserted against it.  Instead, Shenandoah simply needs to state, based on Plaintiffs['] allegations, whether or not Shenandoah believes that Responding Defendants are entitled to indemnification and/or contribution if Plaintiffs' prevail.

(Id. at 3.)

**E.      Whether the Court will Grant Defendant SVF's Motion to Strike the Crossclaims by Defendants Mawyer, Richards, and the Tapscott Defendants**

As an initial matter, the Cross Claimants are incorrect in stating that the Court's resolution of Defendant SVF's Rule twelve (12) motion impacts if their crossclaims remain active in the instant action.  The Third Circuit has held that "a dismissal of the original Complaint as to one of the defendants named therein does not operate as a dismissal of a cross-claim filed against such defendant by a co-defendant."  See Aetna Ins. Co. v. Newton, 398 F.2d 729, 734 (3d Cir. 1968).  In that light, the Court's dismissal of Plaintiffs' claims against Defendant SVF does not on its own extinguish the crossclaims filed by Defendants Mawyer, Richards, and the Tapscott Defendants.

However, after reviewing the FAC, the parties' briefs, and the relevant authority, the Court will grant Defendant SVF's motion to strike the crossclaims against it.  The Court reiterates that motions to strike are disfavored, and "should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some significant form of prejudice to one of the parties to the action."  See Mifflinburg Tel., Inc., 80 F. Supp. 3d at 572 (citations omitted).  It is not the case here that the challenged allegations bear no relation or connection to the subject matter of the instant action.  To the contrary, the crossclaims are explicitly tied to the underlying claims.  However, the Court construes Defendant's SVF's motion to strike as a motion to dismiss the crossclaims, since Defendant SVF chose to incorporate it's arguments supporting dismissal of Plaintiffs' FAC under Federal Rule of Civil Procedure 12(b)(6) into said motion.  For the reasons discussed supra, the Court earlier held that Plaintiffs failed to plausibly allege the existence of a joint venture between Defendant SVF and the other Defendants.  The Court also held above that Plaintiffs' FAC contained insufficient facts to plausibly allege direct or vicarious liability against

Defendant SVF for the acts of Defendants Mawyer, Richards, and the Tapscott Defendants. Because the basis for the crossclaims assert that "to the extent that Plaintiffs' allegations against [Defendant SVF] are proven," they would be "entitled to either indemnification or contribution" from Defendant SVF, the Court finds that these crossclaims also fail to plead facts providing a basis for relief against Defendant SVF. To that end, the Court will construe Defendant SVF's motion to strike (Doc. No. 100) as a motion to dismiss the crossclaims and will grant that motion.[22]

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant the Pixelle Defendants' motion to dismiss Counts Eleven, Twelve, Thirteen, and Fourteen in Plaintiffs' FAC. The Court will also grant Defendant SVF's motion to dismiss Counts Seven and Eight. Finally, the Court will grant Defendant SVF's motion to strike the crossclaims asserted by Defendants Mawyer, Richards, and the Tapscott Defendants. An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

[22]  As a general matter, "Rule 12(f) may not serve as an avenue to procure the dismissal of all or part of a Complaint." See Davila v. N. Reg'l Joint Police Bd., 979 F. Supp. 2d 612, 624 (W.D. Pa. 2013), opinion vacated in part on reconsideration, No. 13-cv-00070, 2014 WL 3735631, (W.D. Pa. July 28, 2014), order vacated on reconsideration sub nom. Davila v. United States, 247 F. Supp. 3d 650 (W.D. Pa. 2017). Accordingly, despite the fact that Defendant SVF titled its motion as a motion to strike, because of the arguments articulated therein, the Court finds that construing the motion as a motion to dismiss is appropriate under the circumstances. While it is not dispositive, the Court also finds this to be a proper avenue for ruling on this motion because the parties appear to have erroneously assumed that dismissal of claims in the FAC would operate as a dismissal of the crossclaims.