IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL E. FUHRMAN, et al.,           :
    Plaintiff                              :          No. 1:21-cv-02024
                                           :
v.                                     :          (Judge Kane)
                                           :
BRIAN A. MAWYER, et al.,               :          (Magistrate Judge Camoni)
    Defendants                             :

## ORDER

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS**:

On December 2, 2021, Plaintiffs Michael E. Fuhrman and Linda M. Angel (collectively, "Plaintiffs"), as Co-Executors of the Estate of Eugene V. Fuhrman ("Decedent"), initiated the above-captioned action by filing a complaint against Defendants Brian A. Mawyer ("Defendant Mawyer"), Charles R. Richards ("Defendant Richards"), individually and t/a d/b/a B&C Enterprise ("B&C"), and Tapscott Brothers Trucking, Inc. ("Defendant Tapscott Trucking"). (Doc. No. 1.)  In their initial complaint, Plaintiffs asserted counts alleging survival, wrongful death, and punitive damages against Defendants Mawyer, Richards, and Tapscott Trucking. (Id. at ¶¶ 28–77.)

On January 31, 2022, Defendants Mawyer, Richards, and Tapscott Trucking collectively filed a motion to dismiss, along with a motion for a more definite statement. (Doc. No. 7.)  On June 28, 2022, the Court denied the motion to dismiss but granted the motion for a more definite statement in part. (Doc. No. 11.)  Subsequently, on July 15, 2022, Plaintiffs filed their first amended complaint, which preserved their prior claims and named all of the same Defendants. (Doc. No. 12.)

On February 20, 2023, Plaintiffs filed a stipulation of the parties to the filing of an amended complaint and the addition of a new party. (Doc. No. 21.)  Accordingly, on February

21, 2023, Plaintiffs filed a second amended complaint naming, for the first time, Defendant Shenandoah Valley Farms, LLC ("Defendant Shenandoah").  (Doc. No. 22.)  In their second amended complaint, Plaintiffs added counts alleging survival, wrongful death, and punitive damages against Defendant Shenandoah.  (Id. at ¶¶ 84–100.)

On February 22, 2023, Plaintiffs filed a second stipulation of the parties to the filing of another amended complaint and the addition of new parties.  (Doc. No. 24.)  On that same day, Plaintiffs filed a third amended complaint naming, for the first time, Defendants Tapscott Brothers Logging, Inc. ("Defendant Tapscott Logging"), Pixelle Specialty Solutions, LLC ("Defendant Pixelle Solutions"), Pixelle Specialty Solutions Holding, LLC ("Defendant Pixelle Holding"), H.I.G. Capitol, LLC ("Defendant H.I.G."), Lindsay Goldberg, LLC, ("Defendant LG"), and Goldberg Lindsay & Co, LLC ("Defendant GL").  (Doc. No. 25.)  In their third amended complaint, Plaintiffs added a survival, wrongful death, and punitive damages count against each new defendant.  (Id. at ¶¶ 124–225.)

On September 9, 2023, the Court granted four separate motions to dismiss Plaintiffs' third amended complaint (Doc. No. 84) filed by defendants: LG and GL (Doc. No. 63); H.I.G. (Doc. No. 65); Pixelle Holding and Pixelle Solutions (Doc. No. 66); and Shenandoah (Doc. No. 60).  In the September 9, 2023 Order, the Court provided Plaintiffs leave to file a fourth amended complaint to remedy the deficiencies identified in the corresponding Memorandum, and directed the Clerk of Court to terminate Defendants LG, GL, and H.I.G. as Defendants in this case.  (Doc. No. 84.)  Plaintiffs thereafter filed a fourth amended complaint on September 22, 2023, wherein they removed all prior punitive damages counts and reincorporated their request for punitive damages into the survival and wrongful death counts alleged against each of the remaining

defendants.  (Doc. No. 85.)

On April 12, 2024, the Court granted (Doc. No. 113) the subsequent motions to dismiss

Plaintiffs' fourth amended complaint filed by Defendants Pixelle Holding and Pixelle Solutions

(Doc. No. 90) and Shenandoah (Doc. No. 88), and directed the Clerk of Court to terminate these

Defendants from the case.  On January 1, 2025, Defendants Tapscott Trucking and Tapscott

Logging (collectively, "Tapscott Defendants" or "Tapscott") filed the instant motion for

summary judgment[1] as to all of Plaintiffs' claims against them, including: (1) vicarious liability;

(2) negligent selection, retention, and supervision; (3) joint venture; (4) negligent entrustment;

(5) negligent maintenance and loading; (6) recklessness; and (7) punitive damages.[2]  (Doc. No.

127 at 6–28.)  The motion was fully briefed.  (Doc. Nos. 128–31, 140.)  On August 5, 2025, this

case was referred to Magistrate Judge Sean A. Camoni for pretrial management.  In accordance

with the request of the parties (Doc. No. 132), Magistrate Judge Camoni heard oral argument on

the motion on September 23, 2025 (Doc. No. 147).

Now before the Court is the December 31, 2025 Report and Recommendation ("R&R")

of Magistrate Judge Camoni (Doc. No. 148), recommending that the Court grant summary

judgment in favor of the Tapscott Defendants as to all of Plaintiffs' claims.  Magistrate Judge

Camoni summarizes the undisputed material facts relevant to the motion for summary judgment

as follows:

On the morning of February 23, 2021, a motor vehicle accident occurred at the

---

[1] Included with their motion for summary judgment is a statement of undisputed material facts
(Doc. No. 127-1) and exhibits (Doc. No. 127-2).

[2] Although Plaintiffs frame their counts against the Tapscott Defendants as survival and
wrongful death, the fourth amended complaint appears to encompass these claims.  (Doc. No. 85
¶¶ 25, 30–33, 74–83, 94–103.)

3

intersection of York Street (Route 116) and E. Middle Street in Hanover Borough, York County, Pennsylvania. Plaintiffs' decedent, Eugene Fuhrman, drove a 2008 Toyota RAV4 westbound on E. Middle Street. Defendant, Brian Mawyer, operated a 2001 Kenworth tractor with a 2021 semi-trailer eastbound on York Street. Notwithstanding a red light and a speed limit of 25 miles per hour, the tractor-trailer approached the intersection at approximately 26 miles per hour. Fuhrman entered the intersection on the green light and Mawyer, who admitted that he ran the red light, struck Fuhrman's vehicle, killing him.

At the time of the accident, the tractor-trailer weighed 85,300 pounds. Neither the tractor nor the trailer had a Pennsylvania permit to allow the tractor-trailer to exceed the combined weight of 80,000 pounds, rendering the vehicle overweight. Tapscott Trucking owned the trailer involved in the accident and was responsible for maintaining it. That entity was an interstate motor carrier registered with the United States Department of Transportation. It was owned by Charles Tapscott and his brother, Troy Tapscott, and was in the business of transporting logs, pulpwood, and equipment. . . .

Tapscott Logging was also owned by Charles and Troy Tapscott and was engaged in the business of harvesting and loading timber onto trailers for transportation to customers. . . .

Tapscott Trucking entered into agreements with independent contractor motor carriers to help it haul loads. Its contracts required the independent carriers to obey and comply with all applicable laws, including federal laws. They also required independent carriers to obtain the necessary permits to haul up to 90,000 pounds.

Charles Tapscott had responsibility for hiring and overseeing independent carriers. Tapscott Trucking vetted independent carriers through an insurance company, which performed a background check to ensure that the independent carriers were legitimate businesses and that they had valid insurance. . . . If any of the commercial drivers hauling Tapscott Trucking trailers noticed problems either when picking up or while hauling trailers, they were supposed to notify someone at Tapscott Logging or Trucking to make any necessary repairs to the trailer at issue. . . .

If Charles Tapscott learned that an independent carrier was not complying with the terms of the contract, which might include its driver not complying with the law, Tapscott Trucking would terminate the contract with the independent carrier.

On October 11, 2019, Tapscott Trucking entered into a General Hauling Agreement with SVF, in which SVF, as the independent hauler, was required, among other things, to obtain its own overweight permits. SVF was an authorized interstate motor carrier registered with the United States Department of Transportation. . . .

4

B&C Enterprise was an authorized interstate motor carrier registered with the United States Department of Transportation. Charles Richards created B&C Enterprise. It had its own DOT authority and permits. Richards owned and was responsible for maintaining the tractor used in the accident.

On March 20, 2020, SVF and Richards, doing business as B&C Enterprise, entered into an Owner Operator Lease Agreement wherein Richards agreed to transport goods for SVF. The Owner Operator Lease Agreement required B&C to comply with all applicable local, state, and federal laws and regulations while transporting goods for SVF. Tapscott's employees, including Dexter Brent Tapscott and Scotty Gibson, would communicate with B&C's drivers through the CB radio, telephone calls, or text messages, regarding the locations where they were required to pick up and deliver each load. In exchange for transporting loads, SVF agreed to pay Richards/B&C a specific rate, according to a rate schedule. B&C's drivers did not report to Tapscott when a load was delivered. After B&C Enterprise delivered a load of Tapscott Logging timber, its driver would submit the ticket to SVF and SVF would pay Richards.

Although SVF knew that Mawyer would be driving for B&C, Richards testified that he never informed anyone at Tapscott. After the accident, Mawyer called Richards and SVF. When Charles Tapscott learned after the accident that SVF had subcontracted its transportation duties to B&C, Tapscott Trucking terminated its contract with SVF.

The Owner Operator agreement between SVF and Richards acknowledged that B&C's drivers were Richards's employees. Both Richards and Mawyer admitted that Mawyer was employed by B&C at the time of the accident and acting within the course and scope of his employment. At all times relevant to the lawsuit, Mawyer considered himself to be solely an employee of B&C Enterprise.

(Id. at 6–11 (internal citations omitted).)  Based on the above facts and relevant legal authority,

Magistrate Judge Camoni concludes that summary judgment in favor of the Tapscott Defendants

is warranted, as "Plaintiffs have not provided sufficient evidence to enable a reasonable jury to

find in their favor on [any] of their claims against Tapscott." (Id. at 12.)  First, in assessing

Plaintiffs' vicarious liability claim, Magistrate Judge Camoni notes that vicarious liability is

predicated upon the existence of an employer-employee relationship, and accordingly refers to

the following factor test utilized by Pennsylvania courts to determine whether an individual is

5

properly classified as an employee of an entity:

> (1) whether the person has responsibility for results only, (2) the terms of any agreement between the parties, (3) the nature of the work to be done, (4) the skill required for performance, (5) whether one employed is engaged in a distinct occupation or business, (6) which party supplies the tools, (7) whether payment is earned by the amount of time spent on or by completion of the job, (8) whether the work is part of the regular business of the employer, and (9) the right to terminate employment at any time.

(Id. at 13–14 (citing Wilson v. IESI N.Y. Corp., 444 F. Supp. 2d 298, 313–14 (M.D. Pa. 2006)).)

Applying the above factor test, Magistrate Judge Camoni concludes that "Tapscott was not Mawyer's employer" and therefore "cannot be held liable for [his] negligence," stating as follows:

> Several factors which are typically present in employer-employee relationships are absent between Tapscott and B&C. First, Mawyer and B&C Enterprise were only responsible for the results of the work. . . . Second, Tapscott did not have an employment contract with either Mawyer or B&C. Third, Tapscott did not hire or select Mawyer or B&C to haul its cargo; Tapscott hired SVF to do so. Fourth, Tapscott was not responsible for supplying the tools necessary for B&C to complete its job. To complete the job, B&C utilized its own tractor, fuel, insurance, and permits. Fifth, the entity that hired B&C paid it based on the number of loads Mawyer successfully delivered, not the amount of time it took him to deliver them. Sixth, contrary to Plaintiffs' argument, Tapscott likely would not have been able to fire Mawyer or B&C. Charles Tapscott testified that he would annul a contract with an independent carrier if he learned that one of its drivers was not complying with the law, in violation of the terms of the contract. However, Tapscott could not have terminated B&C's contract nor fired Mawyer because Tapscott never signed a contract with B&C or Mawyer.

(Id. at 15–17 (internal citations omitted).)  Further noting that "claims regarding negligence in selection, retention, and supervision are [also] typically 'predicated upon an employer-employee relationship,'" Magistrate Judge Camoni concludes that Plaintiffs' claims against Tapscott for the same "are not viable theories of liability here," as it was already determined that no such relationship existed between Mawyer and Tapscott.  (Id. at 29 (quoting Adames v. May

6

Furniture, Inc., No. 17-00652, 2019 WL 8937042, at *8 (M.D. Pa. Nov. 26, 2019)).)

As to Plaintiffs' joint venture claim, Magistrate Judge Camoni notes that Pennsylvania courts look to the following four factors in determining whether a joint venture exists: (1) contribution to the joint venture by each party; (2) sharing of profits among the parties; (3) a joint proprietary interest and right of mutual control over the subject matter of the enterprise; and (4) usually, a single business transaction rather than a general and continuous transaction. (Id. at 19–22.) Applying the above factors to the instant case, Magistrate Judge Camoni determines that "'there is not one iota of evidence' that B&C contributed to a joint venture, shared profits with Tapscott, or possessed joint proprietary interest in or the right of mutual control over the log transportation enterprise." (Id. at 24 (quoting Wilkins v. Heebner, 480 A.2d 1141, 1145 (Pa. Super. Ct. 1984).)

With regard to Plaintiffs' negligent entrustment claim, Magistrate Judge Camoni rejects Plaintiffs' assertion that "Tapscott acted negligently by entrusting its trailer to Mawyer because Tapscott knew or should have known that Mawyer 'had a dangerous history of driving'. . . and 'was recklessly driving over the hours of service.'" (Id. at 31 (quoting Doc. No. 129 at 15, 19).) Magistrate Judge Camoni notes that "Tapscott did not have a legal duty to investigate Mawyer's driving background," and that even if it did, an investigation "would not have appraised Tapscott that Mawyer was likely to use the trailer to harm another person," as Mawyer had only received two prior traffic citations—"neither of which included any allegation of recklessness." (Id. at 37.) Magistrate Judge Camoni additionally notes that "Tapscott's [purported] knowledge of Mawyer's habit of driving beyond the permissible hours is irrelevant . . . where driving beyond permissible hours did not cause or contribute to Mr. Fuhrman's death." (Id. at 38.)

With respect to Plaintiffs' claim that Tapscott negligently maintained the subject trailer, Magistrate Judge Camoni finds that "because a claim of negligence requires proof of causation" and "Plaintiffs do not proffer any evidence linking the trailer's maintenance issues to the accident," Plaintiffs have accordingly failed "to provide enough evidence for a reasonable jury to find in their favor on this claim." (Id. at 39–40.)  Similarly, Magistrate Judge Camoni determines that "Plaintiffs have also failed to provide sufficient evidence for any reasonable jury to find that Tapscott overloaded its trailer in a way that created an unreasonable and foreseeable risk of harm to others." (Id. at 40.)  Magistrate Judge Camoni notes that in Pennsylvania, tractor trailers are allowed to haul up to 80,000 pounds without a permit, and up to 90,000 pounds with a special hauling permit. (Id. at 41.)  The subject tractor weighed 85,300 pounds, meaning that it was "overweight" in the sense that it did not have the requisite permit granting it the authority to haul over 80,000 pounds. (Id.)  Accordingly, Magistrate Judge Camoni concludes that the weight status of the tractor trailer on the day of the accident could not have created an unreasonable and foreseeable risk of harm to others because tractor trailers are allowed to be as heavy or heavier so long as they possess the appropriate permit. (Id. at 42.)

Lastly, regarding Plaintiffs' claims of recklessness and for punitive damages, Magistrate Judge Camoni concludes that "Plaintiffs cannot prove recklessness or obtain punitive damages because they cannot prove that Tapscott was even negligent." (Id. at 45.)  In reaching this conclusion, Magistrate Judge Camoni relies on Moran for & on Behalf of Est. of Moran v. G. & W.H. Corson, Inc., 586 A.2d 416, 423 (Pa. Super. Ct. 1991) and Feld v. Merriam, 485 A.2d 742, 747 (Pa. 1984), both of which support the proposition that a plaintiff must show something more than negligence on the part of a defendant to succeed on a claim of recklessness and to obtain

punitive damages.  (Id. at 45–46.)

On January 28, 2026, Plaintiffs filed objections to the R&R.  (Doc. No. 153.)  In their objections, Plaintiffs challenge the conclusions reached by Magistrate Judge Camoni as to all but their joint venture claim.  (Id. at 10–42.)  First, Plaintiffs argue that genuine issues of material fact exist as to whether an employer-employee relationship existed between Mawyer and Tapscott, such that Magistrate Judge Camoni's recommendation that the Court grant summary judgment to Tapscott as to Plaintiffs' vicarious liability and negligent selection, retention, and supervision claims for lack of such a relationship should be rejected.  (Id. at 5–20.)  Second, Plaintiffs argue that Magistrate Judge Camoni "erred in finding that they failed to adduce facts demonstrating that Tapscott owed and breached a duty of care in entrusting its trailer to Mawyer and B&C," as they presented evidence showing that Mawyer "[recklessly d[r]ove over the [allowed] hours of service," which Tapscott knew or should have known "posed a substantial risk of harm to the motoring public."  (Id. at 26, 28.)  Third, Plaintiffs challenge Magistrate Judge Camoni's recommendation that the Court grant summary judgment as to their claim that Tapscott negligently maintained and loaded their trailers, arguing that they presented evidence demonstrating that: 20% of the brakes on the subject Tapscott trailer were inoperative on the date of the accident; the loads on said trailer were not properly secured or strapped down; and the trailer was overweight.  (Id. at 29–37.)  Fourth, Plaintiffs dispute Magistrate Judge Camoni's finding that "Plaintiffs cannot prove recklessness or obtain punitive damages because they cannot prove that Tapscott was even negligent" (Doc. No. 148 at 45), stating, summarily, that "Plaintiffs' evidence sufficiently shows that Tapscott's conduct was outrageous, extreme, willful, wanton, and reckless" (Doc. No. 153 at 39).

On February 25, 2026, the Tapscott Defendants filed a response to Plaintiffs' objections. (Doc. No. 156.)  Thereafter, on March 4, 2026, Plaintiffs filed a reply brief in further support of their objections to the R&R.  (Doc. No. 157.)

Upon careful review of the Report and Recommendation, Plaintiffs' objections thereto and Defendants' response, as well as all relevant briefing and the record in this case, the Court finds that Magistrate Judge Camoni correctly and comprehensively addressed the substance of Plaintiffs' objections in the Report and Recommendation itself, and therefore, the Court will not write separately to address Plaintiffs' objections.

**ACCORDINGLY**, on this 31st day of March 2026, upon independent review of the record and applicable law, **IT IS ORDERED THAT**:

1. The Court **ADOPTS** the Report and Recommendation (Doc. No. 148) of Magistrate Judge Camoni;

2. Plaintiffs' objections (Doc. No. 153) are **OVERRULED**;

3. The Tapscott Defendants' motion for summary judgment (Doc. No. 127) is **GRANTED**;

4. The Clerk of Court is directed to defer entry of judgment in favor of the Tapscott Defendants until the conclusion of this case; and

5. The Court will hold a telephone conference with Plaintiffs and the remaining Defendants Mawyer and Richards on April 28, 2026 at 11:30 am to discuss a trial date.  Plaintiffs' counsel shall initiate the call. The telephone number of the Court for purposes of the call is 717-221-3990.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania